# Richmond.

## CURTIS DAVIS V. COMMONWEALTH.

### January 19, 1922.

#### Absent, Saunders, J.

1. APPEAL AND ERROR—*New Trial—Verdict Contrary to the Law and the Evidence.*—Where the evidence consists of circumstances and presumptions, a new trial will not be granted merely because the court, if upon the jury, would have given a different verdict. To warrant a new trial in such cases the evidence should be plainly insufficient to warrant the finding of the jury. This restriction applies *a fortiori* to an appellate court. For in the appellate court there is superadded to the weight which must be given to the verdict of a jury fairly rendered, that of the opinion of the judge who presided at the trial, which is always entitled to peculiar respect upon the question of a new trial.

2. APPEAL AND ERROR—*New Trial—Verdict Contrary to the Law and the Evidence—Code of 1919, Section 6363.*—Under Code of 1919, section 6363, the Supreme Court of Appeals will set aside a verdict on the ground that it is contrary to the evidence only in a case where the jury have plainly decided against the evidence, or without evidence.

3. INTOXICATING LIQUORS—*Evidence Sufficient to Support Verdict—Case at Bar.*—Upon a prosecution for violation of the prohibition law, it appeared that officers located a still in operation in a recent clearing, reached only by a road leading directly to and from the residence of the accused, that defendant's pigs were feeding there, that automobiles made frequent trips thereto, and that frequent shipments of sugar and other supplies were also being made, and there was other evidence connecting defendant with the still.

  *Held:* That, the evidence presented a case, the determination of which was peculiarly within the province of a jury, and their verdict of guilty was conclusive upon appeal.

Error to a judgment of the Circuit Court of the city of Williamsburg and county of James City.

*Affirmed.*

The opinion states the case.

*Frank Armistead* and *C. A. Branch,* for the plaintiff in error.

*John R. Saunders,* Attorney General; *J. D. Hank, Jr.,* Assistant Attorney General, and *Leon M. Bazile,* Second Assistant Attorney General, for the Commonwealth.

Prentis, J., delivered the opinion of the court.

The accused has been convicted of a violation of the prohibition law and sentenced to pay a fine of $100 and be confined in the county jail for three months. The error assigned is that the court should have sustained the motion to set aside the verdict as contrary to the law and the evidence.

[1, 2] The rule governing this court in such cases has been so frequently stated that it seems a useless repetition to restate it. Inasmuch, however, as reputable attorneys still appear to question it, we will cite *Dean's Case,* 32 Gratt. (73 Va.) 917, where this is said: "Where the evidence consists of circumstances and presumptions, a new trial will not be granted merely because the court, if upon the jury, would have given a different verdict. To warrant a new trial in such cases the evidence should be plainly insufficient to warrant the finding of the jury. This restriction applies a *fortiori* to an appellate court. For, in the appellate court, there is superadded to the weight which must be given to the verdict of a jury fairly rendered, that of the opinion of the judge who presided at the trial, which is always entitled to peculiar respect upon the question of a new trial.

"A new trial asked on the ground that the verdict is

contrary to the evidence ought to be granted only in a case of plain deviation from right and justice.  And this court will set aside a verdict on such a motion only in a case where the jury have plainly decided against the evidence, or without evidence.  *Blosser* v. *Harshbarger,* 21 Gratt. (62 Va.) 214, and cases there cited." *Cluverius* v. *Commonwealth,* 81 Va. 816.

This rule is now mandatory upon this court under Code 1919, section 6363.

[3] It is hardly necessary to recite all of the evidence presented by this record.  The uncontradicted facts which justified the jury in their finding may be thus summarized: The accused was the tenant of a part of an island known as Yarmouth island, owned by Coleman Richardson, and the house in which he lived was also occupied by his wife, his grown son, a daughter and a son-in-law.  On Friday morning, March 11, 1921, the officers, whose suspicions had been aroused from information previously received, located in a clearing of about a quarter of an acre of land, a large still with its outfit, consisting of mash boxes filled with six or seven thousand gallons of mash, steam vats, steam engines, large quantities of pipe, brass couplings, etc., to the value of about $2,000.  The cordwood recently cut from the clearing had been racked up, and a number of pigs belonging to the accused, running loose, were also found there. The place was remote, there being only one road leading to the island and this passed by the farmyard of the accused. There one fork of this road goes by the yard to Simpson's island, while the other fork passes directly from his yard to the clearing where this still was located, and no one lives between this dwelling and that point about a mile and a half distant.  A wagon track recently made leading from the yard to the still and back again was definitely traced and the wagon which was in the use and control of the accused stood in his yard.  He had a horse with a deformed foot or ankle which made a track which was especially

noticeable, and this track was observed by one of the witnesses. At the residence of the accused, in the barnyard, a half barrel keg which contained about half a pint of corn whiskey was found. A number of holes had been dug in the garden, and in one of them a glass bottle containing a small amount of corn whiskey was also found. The suspicion of the officers that the still was located on the island was aroused by the fact that large touring cars were making frequent trips thereto, and that frequent shipments of sugar and other supplies were also being made.

The accused attempted to prove an alibi, and testified that early Thursday morning he left his home for Newport News, a nearby city, and that he did not return until Friday afternoon. Even if this alibi had been completely proved, its probative value would have been slight. The only support for it is found in the testimony of one witness, who testified that he saw the accused in Newport News on Friday, the 11th day of March, at four o'clock P. M. at the house of the witness, and that the accused told him that he would return home on the afternoon train. It is of course apparent that he might have been at home within the twenty-four hours preceding the discovery of the still on the morning of Friday, March 11th, and nevertheless have been in Newport News at four o'clock on the same afternoon.

The location and operation of the still, reached from the land side of the island only by this road leading directly to and from the residence of the accused, the recent clearing of the quarter of an acre of land at its terminus at the still, the feeding of his pigs there, the passing and repassing of large automobiles with supplies, could hardly have occurred without the defendant's guilty knowledge and participation. Whether this be true or not, the evidence presents a case, the determination of which is peculiarly within the province of a jury, and their verdict upon the testimony is conclusive here.

*Affirmed.*