# Richmond

RAYMOND WILLIAMS v. COMMONWEALTH OF VIRGINIA.

November 22, 1948.

Record No. 3423.

Present, All the Justices.

W. L. Devany, Jr., for the plaintiff in error.

J. Lindsay Almond, Jr., Attorney General, and Ballard Baker, Special Assistant to the Attorney General, for the Commonwealth.

MILLER, J., delivered the opinion of the court.

Raymond Williams was indicted in the Circuit Court of Surry county for breaking and entering an outhouse with intent to commit larceny, and the larceny therefrom of fifty-two pieces of cured hog meat—hams, shoulders and sides —valued at $550. Upon his trial before a jury he was convicted and punishment fixed at five years in the penitentiary. A general verdict was returned and as only one count is contained in the indictment it constitutes conviction for the major crime charged, i. e., housebreaking with intent to commit larceny. *Speers* v. *Commonwealth*, 17 Gratt. (58 Va.) 570; *Myers* v. *Commonwealth*, 132 Va. 746, 111 S. E. 463; *Drinkard* v. *Commonwealth*, 163 Va. 1074, 178 S. E. 25. From a judgment confirming the verdict, this writ of error was obtained.

Petitioner relies upon several assignments of error. They may be thus stated: (1) that accused was not present when the admissibility of certain evidence was argued and ruled upon, i. e., that this was a part of the trial in his absence; (2) the venue of the crime was not proved to be in Surry county; (3) the evidence failed to prove the guilt of accused; (4) the Commonwealth's Instructions Nos. 3 and 5 were erroneous; and (5) prejudicial remarks were made in argument.

The assigned errors render it necessary to set forth the evidence in detail.

On the 12th day of July, 1947, Walter Jackson, a resident of Surry county, was the owner of eighty-four pieces of cured hog meat, consisting of twenty-eight hams, twenty-nine shoulders and twenty-seven sides. Four days previously they had been removed from the smokehouse to an outhouse or barn adjoining the dwelling. Certain burlap bags that had contained oats and in which a few oats remained were also in the barn. On that date, at 2:30 o'clock p. m., just before leaving his house for the afternoon and evening, Walter Jackson observed that the meat was undisturbed. Upon his return at 12:30 that night, he noticed that the lock on the barn had been "prized" and entrance forcibly effected. Twenty-eight hams, twenty-two shoulders and two sides had been stolen.

Tire tracks, plainly visible in the yard, disclosed that an automobile, or vehicle of that character, had been used in carrying out the theft. It had been driven to within four steps of the barn door. The imprints in the dirt disclosed that the car had been there "backed up" and turned. Some of the bags were also missing and there was "evidence of oat bags having been dragged from the door."

On the day following, Elbert O. Cockes, sheriff of Surry county, was notified. Accompanied by Deputy Sheriff Cofer, he came to the scene of the crime. Upon viewing the premises, they observed the several pieces of meat that had not been stolen and oat bags that had been left in the barn.

In his testimony, Sheriff Cockes says that he saw where the car had been driven near to the barn door and there backed up, and that the barn "had been broken into." The tire marks were twelve to fourteen feet from the door. It was also evident from two other marks seen on the ground at or near the door that objects had been dragged from the barn to the side and to the rear of where the car had stood. He said that "you could see very plainly the tire marks. And I made a little drawing of the tire marks." His testimony also discloses that wherever the car traveled over

surface that inclined to one side or the other, the rear wheels did not "track perfectly."

It was evident from these imprints and those where the car was backed and turned that three different kind of tires were on the car. Though the two front tires were alike— the two rear ones were not; nor were they similar to the front tires. The description given by the witness is clear and impressive—"The two front tires had six straight grooves, which I drew six straight lines to represent. They were on the left and right front. The left rear tire had a zig-zag marking, with six grooves, and with a straight line in between each of the grooves. And the right rear tire had little notched places, with a straight line in the center of the notches, and there were six of those."

The drawing made by this witness was introduced in evidence as Exhibit No. 3. It confirms his accurate description.

The above constitutes the material circumstantial evidence apparent at the scene of the crime.

At a later date, the sheriff received information that prompted inquiry at the Division of Motor Vehicles as to who was owner of an automobile bearing a certain license number. Upon ascertaining that the car bearing that license belonged to Raymond Williams of Norfolk, Virginia, the sheriff, on July 28, 1947, accompanied by two detectives, located it parked near Williams' home in that city. Their presence was made known to him and he readily acknowledged ownership of the automobile and, upon request, opened the back of the car.

This graphic account of what his senses made known to him was given by the witness: "You could see grease all around in the back and up on the sides, and across the back of the car. The odor of smoked meat was very strong."

Request was made of Williams that they be allowed to examine his house. He objected and assigned as a reason the illness of his mother-in-law. Upon being told that they would secure a warrant, he consented to the search. In a room adjoining the kitchen, a bag was found which con-

tained a cured hog shoulder and a few oats. In view of this discovered evidence, Raymond Williams was taken to the police station in his car. On that trip, the sheriff says the "smokehouse odor" in the car was very plain.

The prisoner was questioned with regard to the odor in the car, whether he had loaned it to anyone in July, where he secured the shoulder, and how the grease got in the back of the automobile. He denied knowledge of any such odor; said he had not loaned his automobile out on any days except July 24th and 27th; that on July 19, 1947, he was in Rocky Mount, North Carolina, at a June German dance, and purchased two pieces of meat of which that found at. his home was one. He said he didn't know how the grease got in the car.

The automobile was held and examined. The treads of each tire corresponded with those on the diagram made from the imprints near the barn. The sheriff also said that "the tracking of the car was as I have stated before, it did not track."

At the trial where the diagram of the tire marks (Ex. 3) was in evidence before them, the jury, in the presence of the accused, viewed the automobile which was then equipped with the same four tires. The grease seen in the car when located on July 28th near Raymond Williams' home could be observed when the trial was had on October 24, 1947.

The bag and piece of meat found at Raymond Williams' home was introduced in evidence. The shoulder was identified by Walter Jackson as a piece of the stolen meat and the bag as "a seed oats bag that was piled along with other similar bags in the barn." A few oats remained in the bag and some are, even now, stuck to and partially embedded in the soft or cut side of the shoulder. Identification of the meat was made by comparison with one of the shoulders that had not been stolen and by being an old-fashioned "square-cut shoulder." Rendering the identification more certain was the manner in which the inside of the hock had been slit and the character of the tie made in the binder twine inserted therein and looped, and by which the

shoulder is hung. That the witness was familiar with the slit in the hock and the manner of making the tie in the twine is by him made evident. He said, "I slit and tied it up myself. * * * You could not find many people who would cut meat like that. That is an old-fashioned way to cut it; and I just keep it up and cut it like that."

The first assignment of error asserts that the prisoner was not present when the court ruled upon the admissibility of certain evidence—that his constitutional and statutory right to be present during the trial was thereby violated.

The right of one charged with felony to be personally present throughout his trial was a basic principle of our common law. The first sentence of section 4894 of the Code of Virginia, 1942 (Michie), "A person tried for a felony shall be personally present during the trial," is but a legislative declaration of that principle. *Noell* v. *Commonwealth*, 135 Va. 600, 115 S. E. 679, 30 A. L. R. 1345.

Our inquiry is to determine if what transpired in the absence of the accused constituted any part of the trial.

Exhibits Nos. 1 and 2 had been introduced in evidence before the jury. No. 1 was a shoulder owned by Walter Jackson that had not been taken. No. 2 was the shoulder found in the possession of the accused and which had been identified as having been stolen. The witness, Walter Jackson, was asked by the Commonwealth's Attorney, "Have you any meat at all left there at your place?" The evident purpose was that if he answered in the affirmative then to have him view the two pieces of meat already in evidence and say which one had been left at his farm and how much other meat he had which was not stolen and could be by him compared with that in evidence, thereby rendering more certain and convincing his identification of the piece found in the possession of the accused. Upon objection to that question on the ground that the comparison was improper, the judge and counsel retired to the judge's chambers to consider the admissibility of that evidence. The accused and jury were left in the courtroom. After hearing argument, the judge concluded that the question was

proper and said: "I will let you save the point and will let it in." Counsel for the accused replied, "We except. And, if your Honor please, it is understood that we object to the question and any answer thereto?"

Upon their return to the courtroom and in the presence of the jury and accused, the judge made the following announcement: "Gentlemen of the jury, the objection to the above question by the attorney for the defendant is overruled, and the witness is permitted to answer the question." After that ruling was made, the question was repeated by the Commonwealth's Attorney—"Did you have any meat left after the raid?" "A. Yes, sir." "Q.. What did you have left?" Counsel for the accused again objected The objection was overruled and exception taken. The witness thereupon answered, "Seven shoulders and 25 sides." He again identified Exhibit No. 1 as a shoulder that had not been stolen, whereupon counsel for the accused objected and excepted as follows: "We are objecting of course to that question and answer, for the reasons heretofore given; and I understand that the Court overrules the objection, and exception is taken?"

It will be readily seen that though the court heard argument out of the presence of the accused upon whether the question and testimony sought to be elicited were proper, the official ruling was actually made in open court in his presence and objection and exceptions there taken. Nothing was done in the absence of the accused that could affect his interest. The questions were asked, the ultimate ruling made, and the objections and exceptions thereto taken by counsel in his presence.

What happened was a temporary suspension of the trial for the judge to be advised upon a purely legal question that had arisen to the end that a correct ruling could be made. Upon resumption of the trial that official ruling was made in the presence of the accused and counsel, and his interests were fully protected.

The prisoner's right of personal presence in a felony case throughout the trial from arraignment to sentence, when

anything is done that can affect his interest, is an inalienable one. It is to be rigidly and jealously guarded. Yet, in its protection and enforcement, it must not be so enlarged, as to exceed its true scope and thereby made to include all inquiry into and consideration of purely legal matters by the trial judge which are in fact and reality merely careful and prudent preparation for the resumption and conduct of the trial.

In *Palmer* v. *Commonwealth*, 143 Va. 592, at p. 605, 130 S. E. 398, the late Chief Justice Prentis thus defined the scope of that prerogative.

"It has been frequently said, speaking generally, that courts rigidly enforce the prisoner's right to be present at every stage of the trial from his arraignment to his sentence, when anything is done which can affect his interest. Among the more recent cases here are *Fetters* v. *Commonwealth*, 135 Va. 501, 115 S. E. 692; *Noell* v. *Commonwealth*, 135 Va. 600, 115 S. E. 679, 30 A. L. R. 1345; *Pierce* v. *Commonwealth*, 135 Va. 635, 115 S. E. 686, 28 A. L. R. 864. Generally stated, the rule is that he must be present on his arraignment, when any evidence is given or excluded, when the jury is charged, when the trial court wishes to communicate with the jury in answering questions by them, and when the jury receives further instructions. He must be present at every stage of the trial proper."

See also, *Rogers* v. *Commonwealth*, 183 Va. 190, 31 S. E. (2d) 576.

We do not consider this conference in the judge's chambers to have been a part of the actual trial, and find no denial of any right of the accused or error in the procedure adopted.

The assignments of error that the venue of the crime was not proved and that the evidence is insufficient to establish the guilt of the accused will now be considered.

The crime charged in the indictment and for which the accused was convicted was actually committed in Surry county. That is not disputed. The venue of the crime was therefore in that county. *West* v. *Commonwealth*, 125 Va.

747, 99 S. E. 654; *Hart* v. *Commonwealth*, 131 Va. 726, 109 S. E. 582, and *Johnson* v. *Commonwealth*, 141 Va. 452, 126 S. E. 5.

▉▉ Accurately speaking, the contention made by the accused that proper venue was not proved is really a claim that the evidence is insufficient to establish his presence in Surry county where and when the crime was committed. He insists that the only substantial evidence connecting him with the offense charged was his possession of one parcel of the stolen goods and that possession was not in Surry county but in the city of Norfolk. He then asserts that venue, or, more correctly speaking, his presence in the jurisdiction of the crime, was not proved.

That contention loses sight of the fact that unexplained or insufficient explanation of exclusive possession of recently stolen goods, either within or without the jurisdiction of the actual theft, is sufficient to raise the factual presumption or inference of guilt of the larceny at the place where the crime was actually committed. The presumption against one that may be thus raised is not limited to the territorial jurisdiction where he is found in possession of the stolen goods. Venue, or presence where the crime was committed, may be proved by circumstantial evidence. *West* v. *Commonwealth; supra.*

Here there are also additional incriminating circumstances directly tending to establish his presence in Surry county at the time the felony was committed.

The forcible entry and theft from the barn were parts of the same transaction committed at the same time. That the car owned by the accused was used in removing the stolen goods is clearly established. By his admission, it is proved that the automobile was in his possession during the entire day on which the felony was perpetrated. This establishes his presence at the scene of the crime.

The observation made by Mr. Justice Eggleston in *Wilborne* v. *Commonwealth*, 182 Va. 63, at page 66, 28 S. E. (2d) 1, is most pertinent.

"While, of course, one cannot break into a building with-

out being physically at the scene, his guilt may be established by circumstantial evidence. The direct testimony on the part of some one who saw him at or near the scene of the crime, in the commission of the act, is not necessary and, indeed, is unusual in cases of this character."

Added to these incriminating circumstances is the clearly proven fact that sixteen days after the felony was committed, the accused was found in possession of part of the stolen goods.

The statement made by him on July 28, 1947, in explanation of his possession of the shoulder that was later identified as one of those stolen on July 12, 1947, was of such character as might well have warranted its rejection by the jury, which their verdict makes evident they did.

In the cases of *Drinkard* v. *Commonwealth*, *supra*, at p. 1083, which presented circumstances somewhat similar to those at hand, yet not so convincing of guilt, this court said:

"But when evidence has been introduced, which, if believed, establishes that a house has been broken and entered and goods stolen therefrom, and warrants an inference beyond a reasonable doubt that the breaking and entering and the larceny of the goods were committed at the same time, by the same person or persons, as a part of the same transaction, upon principle and authority, the exclusive possession of the stolen goods shortly thereafter, unexplained or falsely denied, has the same efficiency to give rise to an inference that the possessor is guilty of the breaking and entering as to an inference that he is guilty of the larceny. In such a case the rules, with reference to whether the possession proven is sufficient to warrant an inference beyond a reasonable doubt that the possessor is guilty of the breaking and entering with intent to commit larceny, are practically the same as those applying with reference to whether it is sufficient to warrant an inference beyond a reasonable doubt that the possessor is guilty of the larceny."

Every material fact or circumstance necessary to prove the guilt of the accused is definitely established by competent evidence beyond all reasonable doubt. In un-

broken sequence, the chain of circumstances points with certainty to him as the guilty party. All facts and circumstances are consistent with his guilt and inconsistent with any reasonable hypothesis of innocence. No more is necessary. *Johnson* v. *Commonwealth,* 152 Va. 973, 146 S. E. 260; *Langford* v. *Commonwealth,* 154 Va. 879, 153 S. E. 821; *Clarke* v. *Commonwealth,* 159 Va. 908, 166 S. E. 541; *Drinkard* v. *Commonwealth, supra,* and *Wilborne* v. *Commonwealth, supra.*

Exceptions were taken by the accused to Instructions Nos. 3 and 5 given at the instance of the Commonwealth. They read as follows:

Instruction No. 3: "The Court instructs the jury that possession of recently stolen property creates a presumption of guilt of the larceny of the property, and places upon the accused the burden of explaining such possession."

Instruction No. 5: "The Court further instructs the jury that if you do not believe from the evidence, beyond a reasonable doubt, that the defendant, Raymond Williams, alone, broke and entered the barn of Walter Jackson, as alleged in the indictment, or that he was present, aiding and abetting in the breaking and entering of said barn, yet if they do believe from the evidence, beyond a reasonable doubt that the defendant took and carried away any of the meat of Walter Jackson of the value of $50.00 or more, then they should find the defendant guilty of Grand Larceny, and fix his punishment at confinement in the Penitentiary for not less than one nor more than ten years, or, in the discretion of the jury, by a fine not exceeding five hundred dollars and confinement in jail for any term not exceeding twelve months."

The objection made to No. 3 was that it should state to the jury that they could only find the accused guilty of larceny of such of the stolen property as actually came into his possession.

No. 5 was challenged on the ground that there was "no evidence on which it can be based."

A careful inspection of Instruction No. 3 will dis-

close that the court did not tell the jury that possession of a part of recently stolen property created a presumption of guilt of stealing other property taken at the same time. A fair interpretation of the language used limits the presumption of guilt so created by such possession to the actual property found in the possession of the accused.

It unmistakably appears that the one who broke and entered the barn perpetrated the theft of all of the parcels of meat. Under the circumstances here proved, we are of opinion that even if the language is susceptible of the construction that the presumption of guilt applies to the theft of all of the property taken on that occasion, there would be no error in the instruction. This question was presented in the case of *Johnson* v. *Commonwealth, supra.* The accused was there convicted of stealing four automobile tires of about the value of $60. Two of the four tires that had been stolen at the same time were found in his possession. If he was guilty of the theft of only two, his offense would be a misdemeanor, whereas the value of all four amounted to $60 or more, and their theft constituted a felony. The court there said:

" * * * It sufficiently appears from the evidence that the thief who broke into the garage stole all four of the automobile tires of the value of $66.68. In the absence of evidence to the contrary, the exclusive possession of two of the tires by the accused and his failure to make any reasonable explanation of how he came by them warranted the jury, under the circumstances disclosed by the record, in finding him guilty of stealing the four tires." (141 Va. at p. 455).

We also find the principle stated thus in 52 C. J. S., Larceny, p. 927:

"The possession of a part of the recently stolen property warrants the inference that accused stole all of it. Such inference is warranted, however, only as to the property taken at about the same time as that found in accused's possession."

There is no merit in this assignment of error.

It is also insisted that Instruction 3 ignores the explanation given by the accused that he purchased the shoulder, that it should have concluded with the phrase " * * * unless it appears from the evidence that the possession was consistent with the innocence of the accused," or some conclusion of similar import.

This objection was not made to the instruction when it was tendered by the attorney for the Commonwealth and given by the trial judge. That is admitted in the petition for a writ of error. Under Rule 22 of this court, such objection will not now be entertained.

That there was ample proof presented to the jury to justify the giving of Instruction 5 and to sustain the verdict is disclosed by the evidence that has been heretofore set forth in detail and commented upon.

During the argument of Mr. Archer L. Jones who was assisting the Commonwealth's Attorney in prosecution of the accused he said:

"In behalf of the State of Virginia we ask you to convict him (meaning the defendant) and to deal to him a punishment that will be a sign-mark on every highway in Surry County indicative of the fact that thieves are not safe in this County."

That remark was excepted to as prejudicial, and motion made that a mistrial be granted. The motion was overruled and exception taken.

The decisions in this jurisdiction dealing with the question are collected in the recent case of *McLean* v. *Commonwealth*, 186 Va. 398, 43 S. E. (2d) 45. There Justice Hudgins, now Chief Justice, said:

"Sometimes it is difficult to draw the line between proper and improper comments, hence the general rule is to leave such distinction largely to the discretion of the trial court, whose ruling will be allowed to stand unless it is made to appear probable that the party complaining has been substantially prejudiced by the objectionable remarks or argument." (186 Va. at p. 401).

The first part of the remark which asked for con-

viction of the accused was warranted by the evidence and is wholly unobjectionable. The latter part is a strong rhetorical appeal or request to the jury to fix the punishment at a term that would serve as a warning to others. There is no departure from the record or comment upon extraneous matters. It falls within that class of remarks which rests within the sound discretion of the trial judge to determine from the facts and circumstances of the case whether they are prejudicial or not.

The punishment inflicted was justified by the evidence, and the record is wholly devoid of any fact or circumstance prompting a belief that the accused was prejudiced by this remark. Without such probability of substantial prejudice being shown, the language used is insufficient to constitute reversible error. *Steel* v. *Commonwealth*, 157 Va. 810, 160 S. E. 185; *Seay* v. *Commonwealth*, 135 Va. 737, 115 S. E. 574; *Harris* v. *Commonwealth*, 133 Va. 700, 708, 112 S. E. 753, and 24 C. J. S., Criminal Law, sec. 1902, p. 905.

For the reasons herein stated, we are of opinion to affirm the judgment of the trial court.

*Affirmed.*