# Richmond

ARCHIE CARPENTER v. COMMONWEALTH OF VIRGINIA.

June 16, 1952.

Record No. 3979.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan and Whittle, JJ.

The opinion states the case.

W. A. Hall, Jr. and Percy S. Smith, for the plaintiff in error.

J. Lindsay Almond, Jr., Attorney General and Thomas M. Miller, Assistant Attorney General, for the Commonwealth.

SPRATLEY, J., delivered the opinion of the court.

The defendant, Archie Carpenter, was indicted, tried and convicted upon an indictment which charged that he, on or about December 9, 1950, in the county of Orange, Virginia, "with force and arms, in and upon one Virginia Peregoy, the said Virginia Peregoy, then and there being a female person of the age of 15 years, unlawfully, feloniously and violently did make an assault and her, the said Virginia Peregoy, then and there unlawfully and feloniously did ravish and carnally know, against her will and by force, * * *." Code of Virginia, 1950, § 18-54. We granted a writ of error, and defendant asks us to reverse the judgment against him upon a number of grounds.

The evidence may be briefly stated as follows:

The prosecutrix, Virginia Peregoy, a niece of the wife of the defendant, testified that she was fifteen years of age on October 12, 1950. This was verified by her father, and by a birth certificate introduced in evidence at the request of the defendant. She lived in Orange county, on a farm with her father. She had known the defendant about six years. On Saturday, December 9, 1950, her father drove her and Virginia Garner, about fourteen years of age, to the home of the defendant, arriving there about 6:00 p. m. About fifteen minutes later her father returned

to his home. Virginia Peregoy, Virginia Garner, Hazel Carpenter, the wife of the defendant, and his four year-old daughter then got into the automobile of the defendant and he drove them to the town of Orange, arriving there about 7:30 p. m. There they did some small shopping in a food market for a short time, and then all of them re-entered the automobile and Carpenter drove them up the street to find a place to park his car. Not finding an available parking place, they returned towards the food market. Carpenter stopped the car, and Mrs. Carpenter and her little daughter got out. Then Carpenter, with the prosecutrix and Virginia Garner on the back seat of the car, drove to a point outside the town at an S curve, where he turned off and went down a dirt road about one and one-half or two miles, and parked by a railroad track.

According to the prosecutrix, he stopped, got upon his knees on the front seat, and tried to get his hands under her dress, while she and the Garner child were still in the back seat. The prosecutrix knocked his hands away from her knees. He got out of the car, came around to the opposite side, and told her to get out. He tried to pull her out by her hands, while the Garner child was trying to hold her in the car. Virginia Peregoy resisted by pinching, slapping, smacking and kicking him. However, he pulled her out of the car and forced her legs apart while she was up against the back fender opposite the driver's side. She continued to kick him, but, nevertheless, he had sexual relations with her despite her resistance and lack of consent. She finally freed herself and got back in the car, and he drove her and Miss Garner back to Orange and there picked up his wife and child.

Virginia Garner fully corroborated the testimony of the prosecutrix. She stated that after the defendant parked on the dirt road, he made four attempts to put his hands under Virginia Peregoy's dress; tried to persuade her, the prosecutrix, to get out of the car; that when she would not do so he pulled her out, while she, the witness, was trying to hold Miss Peregoy in the car; that he held the prosecutrix up beside the fender with her right hand behind her back while Miss Peregoy continued to scratch, pinch and kick him; that notwithstanding the efforts of Miss Peregoy to prevent his attack, the defendant had sexual intercourse with the prosecutrix; that she saw him pulling up his pants after the occurrence; that upon the return trip to Orange,

Carpenter told them not to tell anybody about what had happened; and that they then rejoined the wife of the defendant and his daughter, went to a motion picture show, got some light refreshments, and thereafter Carpenter drove them home.

With this evidence the Commonwealth rested its case.

In his testimony, the defendant said that he did not drive out of town with the two girls, but only went up the street to turn around while his wife was shopping. Upon cross-examination, he denied that he had previously told two police officers investigating the case that he did drive the two girls to the described dirt road in the county with intention of having sexual intercourse with the prosecutrix; but that when she refused his several requests to get out of the car, he abandoned his purpose and drove back to town.

Sheriff M. M. Myers of Orange county and Officer Porter C. Davis, called in rebuttal, testified to a conversation they had with the defendant on December 13, 1950, before he was arrested. They said that after warning him of his rights, and telling him that he did not have to answer any of their questions, they interrogated him in regard to his movements on December 9, 1950. He first denied that he took the two girls out to the dirt road; but as the questioning continued, the officers confronted the defendant with the two girls. When Miss Peregoy repeated her accusation against him, Carpenter admitted that he did take the girls out to the road in question for the purpose of having sexual intercourse with the prosecutrix, and described the place to the officers; but said, however, he did not have sexual intercourse with the prosecutrix because she refused to get out of the car. He got out but upon her refusal to get out, he got back into the car and drove into town.

Defendant made a general objection to allowing Sheriff Myers to testify on the ground that, in beginning his testimony, "the Sheriff should have made the usual statement that they (the admissions of the defendant) were voluntarily made." When the court held that the admissions might be introduced in contradiction of the defendant, there was no objection or exception. Nor was there any objection to the testimony of Officer Davis.

A number of witnesses testified that the defendant was a steady worker, and that his reputation was good.

At the conclusion of the Commonwealth's evidence in chief, counsel for the defendant made a motion in the presence of the accused to strike the evidence of the Commonwealth. The motion was overruled and defendant excepted. The defendant then introduced his evidence, and at the conclusion of all of the evidence, the court asked if there was any request for instructions. The stenographic transcript of the evidence shows that, upon receiving an affirmative reply, "the Court, counsel for the Commonwealth and counsel for the defendant retired to chambers." No mention is made of the presence of the accused in chambers. Counsel for the defendant then moved to strike the Commonwealth's evidence as to forcible rape, upon the ground that there was "no credible hypothesis for believing it was forceable rape." The court held that the question of force was for the jury and overruled the motion. The defendant excepted, and then asked the court to instruct the jury that there was "no evidence before them upon which they could bring in a verdict of forcible rape." This motion the court overruled and defendant excepted. Instructions were then offered and granted, without exception, fully covering the case. On the same day, February 2, 1951, the jury returned the following verdict:

"We, the Jury, find the defendant guilty of having carnal knowledge of Virginia Peregoy without force and fix punishment at eight years."

The record shows that this then took place:

"The Court: Is there any objection to the form of the verdict?

"Mr. Higginbotham: I think it ought to be she being a female of fifteen years of age.

"Mr. Jackson: We will object to that kind of amendment.

"The Court: What is the objection?

"Mr. Jackson: They find him guilty of having intercourse without force, which is no crime.

"The Court: The evidence shows that she was less than fifteen years of age, I think I will permit the amendment.

"Mr. Jackson: We except to the ruling of the Court.

"The Court: Gentlemen with this amendment to your verdict it now reads: 'We, the Jury, find the defendant guilty of having carnal knowledge of Virginia Peregoy without force she being a female child under the age of sixteen years and fix his

punishment at eight years in the State Penitentiary.' Is that your verdict, gentlemen?

"The jurors answered in the affirmative.

"The Court: Do you wish the Jury polled as to the verdict?

"Mr. Jackson: Yes sir.

"Thereupon each member of the Jury was polled and answered in the affirmative when asked if the verdict as amended was his verdict.

"Thereupon the Court discharged the Jury.

"Mr. Jackson: We move to set aside the verdict of the Jury as contrary to the law and the evidence and not supported by the evidence; that if there were not forcible rape there was nothing."

The motion was set down to be heard on March 29, 1951, and the accused was admitted to bail. The next order in the case, entered on June 8, 1951, so far as material, reads as follows:

"And the court having heretofore, to-wit: on the 2nd day of February, 1951, set this case for argument on the motion to set aside the verdict of the jury for the 29th day of March, 1951, at which time the accused was personally present in open court, and the court heard the oral arguments of the attorney for the Commonwealth and the attorneys for the accused on the motion to set aside the verdict of the jury rendered in this cause on the 2nd day of February, 1951.

"And the court after hearing oral argument took the matter under advisement, and now having considered the arguments and authorities cited and for reasons set forth in a written opinion this day filed and made a part of the record in this case, doth accordingly overrule the motion to set aside the verdict of the jury, to which action of the court the accused by counsel excepted.

"Thereupon the court inquired of the accused Archie Carpenter if he had anything further he wished to say or knew of any reason why the sentence of the court should not be pronounced, and the accused replied in the negative.

"Thereupon the court sentenced the accused, Archie Carpenter, in accordance with the jury's verdict for the crime of statutory rape to be confined in the Penitentiary for a period of eight (8) years."

The trial judge, in his written opinion, states that counsel for the accused in his oral argument on the motion to set aside the verdict relied upon additional grounds that it did not af-

firmatively appear from the record that the accused was present in the court's chambers when his motion was made to strike the Commonwealth's evidence as to forcible rape, and that the court erred in amending the form of the jury's verdict. The defendant, in his brief and argument before this court, relies upon the grounds assigned in the trial court, and upon numerous other assignments of error. He here contends that the indictment, verdict and judgment of the court are fatally defective, because the indictment failed to aver, and the verdict failed to show, that the prosecutrix was not "of bad moral repute and also was a lewd female at and before the time of the alleged offense;" that the court erred in admitting the testimony of Sheriff Myers and Police Officer Davis concerning defendant's statements to them while he was being held incommunicado; that the record fails to show a plea or joinder of issue; that the "sentence is void for failure of the Court to record the proceedings of March 29, 1951," and that the "sentence" recorded in the order of June 8, 1951, is not a sentence in accordance with law.

The weight and sufficiency of the evidence, both as to the commission of the act and the force employed were questions for the jury. The jury had the right to believe or disbelieve the testimony of the defendant entirely or to give it such weight as they thought it merited. They had the right, and it was their duty, to determine the degree of force used by the defendant and the degree of her resistance. They had the witnesses before them, the opportunity to observe their conduct on the stand, and their manner of testifying, and we think that the facts and circumstances connected with the testimony of the two young girls were fully sufficient to warrant them in believing the defendant had intercourse with the prosecutrix, even though they entertained a reasonable doubt that the act was accomplished with force.

The measure of force necessary to constitute rape and the measure of resistance required are pre-eminently questions of fact for the jury, and on a conflict of such evidence, the verdict of the jury must stand. *Gray* v. *Commonwealth,* 184 Va. 236, 251, 35 S. E. (2d) 65.

It follows that the court did not err in refusing to strike the evidence of the Commonwealth relating either to the commission of the offense or the use of force by the defendant. *King* v. *Commonwealth,* 165 Va. 850, 183 S. E. 173.

■ We find no error in allowing the amendment to the form of the jury's verdict. The evidence, as we have said, unquestionably shows that she was under sixteen years of age at the time of the offense. Actually, there was no objection on the specific question of the age of the child. The objection to the verdict was based on the ground "that if there were not forcible rape there was nothing."

Rape is defined in Virginia Code, 1950, § 18-54, as follows:

"If any person carnally know a female of sixteen years of age or more against her will, by force, or carnally know a female child under that age or a female inmate of any hospital for the insane, who has been adjudged a lunatic, or any female who is an inmate or pupil of an institution for deaf, dumb, blind, feebleminded, or epileptic persons, he shall, in the discretion of the court or jury be punished with death, or confinement in the penitentiary for life, or for any term not less than five years. But if such female child be between the ages of fourteen and sixteen years and not an inmate or pupil of such institutions hereinbefore mentioned, and consents to the carnal knowledge, the punishment shall be confinement in the penitentiary not less than one nor more than twenty years." Code 1919, § 4414; 1918, p. 139; 1924, p. 666; 1948, p. 894.

The verdict was ambiguous according to the definition of rape under the statute. If the female be sixteen years of age or more, force must be used to constitute the offense. If she be under that age, force is not an essential ingredient. Here there was no question as to the age of the prosecutrix at any stage of the proceeding. It was, therefore, proper for the court to allow the amendment.

■ It is the duty of the trial court to undertake to reform defective or ambiguous verdicts as to matters of form in the presence of the jury and before they are discharged, in order to show what they intend to find. *Williams* v. *Commonwealth*, 153 Va. 987, 151 S. E. 151; 23 C. J. S., Criminal Law, section 1410, *et seq.*, page 1109, *et seq.*

■ In Virginia, the common law doctrine relating to the right of a person indicted for a felony to be present during his trial has been enacted into statute. Code of Virginia, 1950, § 19-214. The question has often come before this court, and we have held the right to be an inalienable one, when anything is done that can affect the interest of the accused. "It is to be

rigidly and jealously guarded. Yet, in its protection and enforcement, it must not be so enlarged as to exceed its true scope and thereby made to include all inquiry into and consideration of purely legal matters by the trial judge which are in fact and reality merely careful and prudent preparation for the resumption and conduct of the trial.'' *Williams* v. *Commonwealth*, 188 Va. 583, 593, 50 S. E. (2d) 407; *Palmer* v. *Commonwealth*, 143 Va. 592, 605, 130 S. E. 398; *Hampton* v. *Commonwealth*, 190 Va. 531, 553, 58 S. E. (2d) 288; and cases cited in the annotation to Code, 1950, § 19-214.

The test to be applied in determining whether or not the statute has been violated is: Has the interest of the defendant been affected by the action of the judge? *Rogers* v. *Commonwealth*, 183 Va. 190, 194, 31 S. E. (2d) 576.

■ We do not think it can be fairly said that the interest of the defendant has been prejudiced by what took place in this case. As we have heretofore shown, the first motion to strike the evidence of the Commonwealth was made in his presence. At the conclusion of all of the evidence when instructions were being discussed in the judge's chambers, the motion of counsel for the defendant was restricted solely to the elimination of the evidence of the Commonwealth as to forcible rape. This presented the purely legal question of the sufficiency of the challenged evidence as a matter of law. When the motion was overruled the identical question was again presented by the request of the defendant that the court instruct the jury ''that there not being any outcry and report, there is no evidence before them upon which they could bring in a verdict of forcible rape.''

In *Palmer* v. *Commonwealth, supra,* 143 Va. page 606, and *Hagood* v. *Commonwealth,* 157 Va. 918, 928, 162 S. E. 10, 601, we held that it was not necessary for a defendant to be personally present during the preparation of instructions in chambers. All that was here done in chambers was but the preparation of instructions by the judge.

The first motion to strike the Commonwealth's evidence, overruled in defendant's presence, was broad enough to include the second motion relating to its evidence of force. The final motion to set aside the verdict upon the grounds assigned, submitted and argued, in defendant's presence, included all of the grounds assigned in his former motions. Moreover, the jury by their verdict found exactly what the defendant asked the

court to tell them; namely, that the evidence did not show forcible rape.

We, therefore, are unable to see how defendant's rights could have been in anywise affected by the motion made in his absence from chambers when the instructions were being considered.

■ Nor is there merit in the contention that the judgment is illegal because the indictment failed to aver and the verdict failed to show that the prosecutrix was not of bad repute and not a lewd female. This contention is based upon Code of Virginia, 1950, § 18-55.1, which reads as follows:

"Upon the trial of any defendant under the two preceding sections, charged with unlawful carnal knowledge of a female child between the ages of fourteen and sixteen years, if the jury shall find that such female child was of bad moral repute and also was a lewd female, at and before the time of the alleged offense, and that said unlawful carnal knowledge was with her consent, the defendant shall not be convicted of rape, but such finding shall not bar a prosecution for fornication or contributing to the delinquency of a minor child, * * *."

The indictment charges the crime of rape in accordance with the provisions of Code, § 18-54. It set forth the elements of the offense, both at common law and as defined by statute. It is sufficiently comprehensive to include rape by force and statutory rape, without force. Under it, the jury could find whether the rape, if any, was committed upon the prosecutrix against her will, by force, or with her consent, and fix the punishment accordingly. *King* v. *Commonwealth, supra.*

There was no evidence introduced or offered to be introduced as to the morals or reputation of the prosecutrix. The defendant denied having carnal knowledge of her, consequently, he did not rely upon her consent or lack of chastity. The chastity of a female is not made an ingredient of the offense by our statute. The good repute of the prosecutrix here was not in question. The law presumed it to be good. If it was not, that was a matter of defense. An accused who seeks to escape conviction for an offense of this nature upon the ground that the female child he has abused is lewd and not of good repute must show it. The law will not help him out with presumptions against her chastity.*

---

* For annotations on "Presumption and burden of proof as to chastity under statutes making chastity an ingredient of rape," see 43 L. R. A., New Series, page 476 and 3 A. L. R., page 1462.

■ The trial court's order of February 2, 1951, recites that the defendant "upon his arraignment on the said indictment on the 22nd day of January, 1951, pleaded not guilty." The order of June 8, 1951, recites that when the argument on the motion to set aside the verdict of the jury was made on March 29, 1951, the defendant "was personally present in open court." These orders show joinder of issue, and the presence of the defendant when the proceedings of March 29th were had. The failure to record the proceedings of March 29th as of that day was an inadvertence which did not prejudice the rights of the defendant in any respect. The order of June 8th correctly narrates the prior proceedings and no objection was made in the lower court.

■ The proceedings of a court should be recorded as of and on the day they take place. Section 17-27 of the Code of Virginia, 1950, provides: "The proceedings of every court shall be entered in a book kept for the purpose to be known as the order book. The proceedings of each day shall be drawn up at large and read in open court, by the clerk thereof, at the next session of the court, except those on the last day of a term, which shall be drawn up and read the same day. * * *" *McDowell* v. *Dye, ante,* p. 390, 69 S. E. (2d) 459.

Had the statute been complied with and the proceedings of March 29th been entered on the order book, the record would have merely shown that argument on the motion to set aside the verdict of the jury was that day heard in the presence of the defendant. There was then no order of the court respecting the disposition of the case.

■ The language of the final order reciting the sentence of the accused is rather loose and imperfect. It shows that the court affirmed the verdict of the jury in overruling the motion to set it aside. Thereafter, instead of reciting in the present tense: "It is considered by the court that the accused, Archie Carpenter, be and he is hereby sentenced to be confined in the penitentiary for a period of eight years, in accordance with the jury's verdict," it recites in the past tense that he was so sentenced. The language used was, in itself, a judgment and sentence, and we do not think any purely technical refinement of words should be allowed to change its effect. Moreover, all that the defendant could hope to gain by holding the sentence ineffective and invalid would be to require that the case be remanded to the lower court for a proper sentence, in accordance

with the jury's verdict. *Powell* v. *Commonwealth,* 182 Va. 327, 341, 28 S. E. (2d) 687; *Staples* v. *Commonwealth,* 140 Va. 583, 587, 125 S. E. 319.

We have given careful consideration to all other assignments of error, and find no merit in them. Upon consideration of the whole record, we find no prejudicial error, and are of opinion that the judgment of the trial court must be affirmed.

*Affirmed.*