# Richmond

## Silas Rogers v. Commonwealth of Virginia.

October 9, 1944.

Record No. 2855.

Present, All the Justices.

The opinion states the case.

Robert H. Cooley, Jr., Spottswood W. Robinson, III, J. Byron Hopkins, Jr., and Lynwood E. Smith, for the plaintiff in error.

Abram P. Staples, Attorney General, and M. Ray Doubles, Assistant Attorney General, for the Commonwealth.

CAMPBELL, C. J., delivered the opinion of the court.

Silas Rogers was indicted in the Hustings Court of the city of Petersburg, Virginia, for the murder of Robert B. Hatchell. Upon his arraignment the accused plead not guilty and was tried by a jury, who found him guilty of murder in the first degree, as charged in the indictment, and fixed his punishment at death.

The motion of the defendant to set aside the verdict of the jury and grant him a new trial was overruled, and sentence was pronounced in accordance with the verdict.

This action of the trial court is here by writ of error for review.

The assignments of error will be discussed in the order appearing in the petition and are as follows:

"First: The action of the Court in instructing and communicating with the jury, during the trial of the case and in the absence of the defendant, and in overruling the defendant's motion for a mistrial based thereupon.

"Second: The action of the Court in commenting, in the presence, hearing and view of the jury, during the trial of the case, upon the testimony and demeanor of the defendant as a witness in his own behalf; and in overruling the defendant's motion for a mistrial based thereupon.

"Third: The refusal of the Court, on the defendant's motion at the conclusion of the Commonwealth's case-in-chief, to strike the evidence of the Commonwealth on the ground that it could not support a verdict of guilty beyond a reasonable doubt; said motion being renewed and again denied at the conclusion of the entire case after both Commonwealth and the defense had rested."

The trial of the case was begun on the morning of the 26th day of August, 1943. After partly hearing the evidence, the court recessed for lunch. The order at the time sets forth:

" * * * the said jury were committed to the custody of W. Grey Andrews, City Sergeant of this City, who is directed to keep them together without communication with any other person, and to cause them to appear here at two (2) o'clock p. m., and the Court admonished the jury not to

talk with any one about this case, nor allow any one to talk with them."

After this admonition by the court, the accused was returned to jail and during his absence the judge said to the jury, in the presence of counsel for the accused and the Commonwealth, "that if any of them wanted pajamas, night-clothes or anything like that they should get the sergeant to 'phone for them but they should not 'phone themselves." The judge also told the stenographer not to take down that statement as the court was adjourned and it was not a part of the trial of the case.

Section 4894 of the Code of Virginia provides that, "A person tried for felony shall be personally present during the trial."

It is the contention of defendant that this action of the judge was in legal effect a "cautionary" and "admonitory" instruction given to the jury in the absence of the accused and, therefore, in violation of section 4894, *supra*.

The question presented is: Was this action of the judge a part of the trial conducted in the absence of defendant?

In *Palmer* v. *Commonwealth*, 143 Va. 592, 605, 130 S. E. 398, Chief Justice Prentis, in construing section 4894, said: "It has been frequently said, speaking generally, that courts rigidly enforce the prisoner's right to be present at every stage of the trial from his arraignment to his sentence, when anything is to be done which can affect his interest. Among the more recent cases here are *Fetters* v. *Commonwealth*, 135 Va. 501, 115 S. E. 692; *Noell* v. *Commonwealth*, 135 Va. 600, 115 S. E. 679, 30 A. L. R. 1345; *Pierce* v. *Commonwealth*, 135 Va. 635, 115 S. E. 686, 28 A. L. R. 864. Generally stated, the rule is that he must be present on his arraignment, when any evidence is given or excluded, when the jury is charged, when the trial court wishes to communicate with the jury in answering questions by them, and when the jury receives further instructions. He must be present at every stage of the trial proper."

It is thus apparent that the test to be applied in determining whether or not the statute has been violated is:

Has the interest of the defendant been affected by the action of the judge?

In our opinion, it is inconceivable that in the instant case the remarks of the judge could have affected in the slightest degree the interest of the accused. They were made in the presence of counsel and related merely to the comfort of the jurors and in no sense involved the merits of the case or reflected in any manner the view of the court as to the guilt of the defendant.

Cases relied upon by counsel for the defendant are not in point. Those cases deal with flagrant violations of the statute by the court during the progress of the trial and not, as in this case, with a communication by the judge to the jury during a recess of the court.

There is no merit in this assignment of error.

The second assignment of error challenges: "The action of the court in commenting, in the presence, hearing and view of the jury, during the trial of the case, upon the testimony and demeanor of the defendant as a witness in his own behalf * * * ."

The defendant, testifying in his own behalf, stated that on the night of July 17, 1943, he came directly from Hamlet, North Carolina, to Petersburg, Virginia, on the Seaboard Air Line train, called the "Silver Meteor;" that he did not leave the train at any point between Hamlet and Petersburg; that he was at the Dunlop Street station in Petersburg at the time Hatchell was killed and that he was not the slayer. On his cross-examination he was asked by the attorney for the Commonwealth if he had not stated to the police officers on the day of his arrest that he had come from Raleigh, North Carolina, to Petersburg, Virginia, on an International truck with a red body, a red-top cab with green stripes around it, and that he arrived about 8 o'clock that morning, got off the truck at South street and talked with a boy at the service station. Defendant positively denied having made such a statement to the police, in the presence of the attorney for the Commonwealth.

The foundation having been properly laid for the impeachment of the accused, the Commonwealth introduced as witnesses Captain F. C. Beasley and Sergeant H. S. Hubbard of the police department, both of whom testified that in the presence of the attorney for the Commonwealth the defendant stated that he came from Raleigh to Petersburg in an International truck with a red cab that had green stripes around it. No objection was interposed by counsel for defendant to this evidence, nor was there any cross-examination of the officers.

After this, the defendant was recalled as a witness and was asked this question: "Rogers, you have heard the testimony about some statement that you are reputed to have made concerning a truck, which you denied on the first cross-examination. Tell His Honor and these gentlemen of the jury what, if anything, was said concerning a truck, or anything else, in addition to your riding on the Silver Meteor from Hamlet, North Carolina, to Petersburg, Virginia."

The objection of the attorney for the Commonwealth was sustained by the court and the witness stood aside.

No exception to this ruling of the court was taken by defendant and there is no assignment that the ruling was erroneous. However, error is assigned, as set forth in assignment number two, to the remarks of the court made on the following morning relative to the court's action on the admissibility of the evidence.

In order to elucidate the situation, we deem it expedient to set forth in full the remarks of the court which are the subject of complaint:

"The Court: On yesterday, when the accused was on the stand as a witness in his own behalf on cross-examination, he was asked by the Attorney for the Commonwealth whether he made certain statements relative to coming to Petersburg on a truck. The accused flatly denied making any such statements. The Commonwealth's Attorney then laid the proper foundation, and told the accused that he expected to introduce evidence to show that he did make those statements at the time specified. If the accused had at

that time desired to make some statement about his coming into Petersburg on a truck, that was the time for him to say whatever he wanted to say, although he had denied making those specific statements. The Commonwealth's Attorney did introduce evidence to the effect that the statements were made by the accused.

"Last night the accused was again put back on the stand, and the accused was asked to state what he did say in regard to coming into Petersburg on a truck. At that time I ruled that the accused had no right to make any such statement. I am still of the opinion that I was absolutely correct in that ruling. The accused has no right to take what is ordinarily called 'two bites at a cherry.' He had the right, if he denied, as he did, making those statements, to say what, if anything, he did say. But the accused has no right to sit idly by, so to speak, and to take the chance that the Commonwealth will not introduce evidence which he says he will introduce, and after the Commonwealth does introduce that evidence, then to come on the stand and say I want to say what I want to say.

"So I say that I think my ruling last night is absolutely correct according to the law of the State of Virginia.

"However, this is a serious case, and I am going to reverse my ruling in that regard because it is a serious case, and I will let the accused go on the stand and make any statement which he says he made in regard to coming into Petersburg on a truck. I am not going to permit him to reiterate anything which he has said about coming into Petersburg on the Silver Meteor, because he has testified to that.

"So, you may put him back on the stand, if you want to, for him to make any statement which he wants to make, which he claims he made with regard to coming into Petersburg on a truck."

It is defendant's contention that these remarks come within the ban of the rule of law in this Commonwealth which prohibits the court from indulging in remarks which reflect the bias or the prejudice of the court toward the character or

weight of testimony, or toward the credibility of the witness.

While we are unwilling to place the stamp of our approval upon some of the language employed by the court, we are of opinion that no harm resulted to the defendant from the court's statement. It is self-evident that if the court had any prejudice against the defendant, it would not have reversed its former ruling and permitted the defendant to be recalled.

There is no merit in the second assignment of error.

The third assignment of error challenges the action of the trial court in refusing to strike the evidence of the Commonwealth as insufficient to warrant a verdict of guilty, and in refusing to set aside the verdict of the jury because contrary to the evidence.

The evidence adduced by the Commonwealth and the defendant is in irreconcilable conflict. It was the province of the jury to resolve the conflict in the evidence and this the jury has done in favor of the Commonwealth. This being true, it only becomes necessary to determine whether or not the evidence of the Commonwealth is sufficient to sustain the verdict of guilty rendered by the jury.

The material preliminary facts are as follows:

On the night of July 17, 1943, or early in the morning of the day following, a Studebaker automobile, owned by one Leslie Cook, was stolen from in front of his residence in Raleigh, North Carolina. This automobile was driven from Raleigh to Petersburg. The driver, en route, picked up two soldiers, James Jordan and Charles Stephens, just outside Raleigh and transported them in the car to Petersburg.

On the morning of July 18, 1943, at approximately 7:00 o'clock, the attention of two Petersburg officers, W. M. Jolly and the deceased, Robert B. Hatchell, while driving a patrol car, was attracted to the Studebaker. They drove their car beside the Studebaker and ordered the driver of the latter to pull to the curb. Instead, the driver rapidly pulled away and was pursued by the police officers at a speed of sixty or seventy miles per hour through the streets of Petersburg until the Studebaker was wrecked at the dead-end of a

street by the Petersburg Hospital. The driver jumped from the Studebaker and ran into the area adjacent to the hospital. Upon the arrival of the officers, Jolly took the soldiers into custody while Hatchell pursued the escaping driver.

Between 7:40 and 7:45 on that morning, two shots were heard. Hatchell had been shot and was, a minute or so later, found lying between the hospital and a line of hedges growing south thereof. Two wounds, caused by one bullet, were inflicted upon him, as a consequence of which he died shortly thereafter on the same day. The bullet had entered the left hip and penetrated his body, making its exit from the abdomen below the navel. The deceased's pistol was missing from his holster, and neither the bullet nor the pistol was produced in evidence at the trial.

The defendant, Silas Rogers, was arrested about 9:40 a. m. on the same day, at the north end of the Appomattox bridge, on the edge of the city of Petersburg. It is the theory of the Commonwealth that he was the driver of the stolen Studebaker and the slayer of Officer Hatchell.

In support of its theory that the defendant was the guilty agent, the Commonwealth relied upon two distinct phases of the case, to-wit: the direct evidence as to the identity of the defendant as the driver of the wrecked automobile and the circumstantial evidence showing that the defendant fired the shot that killed Officer Hatchell.

James Jordan, one of the occupants of the Studebaker car from Raleigh, North Carolina, to Petersburg, Virginia, testified positively that the defendant was the driver of the car and also testified as to the manner of his dress and identified the clothing at the trial. His evidence on this score was:

"He had a light tan shirt on, with the sleeves cut off or ripped off right near the elbows. And he had on a pair of big balloon pants, with blue stripes; and high black top shoes; and a sailor hat on the back of his head."

The evidence of Charles Stephens was corroborative of that of Jordan in every detail.

While it is true these witnesses admitted that they were absent from the army without leave and gave a false

account in regard to the place where they were stationed, their credibility was a question for the jury and cannot be challenged in this court.

W. M. Jolly, the officer who ordered the driver of the Studebaker car to pull over to the curb, testified without equivocation that the defendant was the driver of the car. Jolly further testified that when the car was wrecked upon the hospital grounds, the defendant jumped out of the car and ran east on the south side of the hospital. In describing the dress of the defendant, he stated that defendant was wearing a very dirty white sailor hat and a brown shirt.

Mrs. Marie Davis testified that she lived across the street from the hospital; that she witnessed the wreck of the Studebaker from the window of her room; that she saw the driver of the car jump before the car was wrecked; that he wore a little white cap and a tan shirt which was torn on the shoulder; that he ran around back of the hospital, followed by a police officer. She further testified that she saw two soldiers in the Studebaker car who were later taken in charge by Officer Jolly; that after the wreck of the car she heard two shots in the direction of the operating room of the hospital.

C. L. Bain testified that he was a patient in the hospital, in room 105, which had a southern exposure on the first floor; that he was awake about 7:10 a. m., looking out of the window; that a colored man stopped in front of his window and looked in the direction of Madison street; that the man was approximately eight feet from the window; that the man he saw outside his window was the defendant. He further testified that twelve or fifteen minutes after the colored man passed his window, Officer Hatchell came to the window and they engaged in conversation for a brief period; that about three or five minutes after Hatchell left he was looking out the window and saw "Officer Hatchell's hat fly through the air and just before it hit the ground there were two discharges from a revolver and I saw him reel and fall;" that he did not see who fired the shots.

Mrs. E. O. Prince testified that she was a registered nurse; that she was on duty at the Petersburg Hospital on the morning of July 18, 1943; that she was nursing a patient in room 107, located on the first floor on the south side of the hospital; that at approximately 7:15 a. m., she saw an officer running around the side of the hospital building; that "about twenty minutes after that I observed the same officer coming from Madison street, on the same side of the hospital, running this time, with a gun in his hand, and then I saw a dark-skinned colored man, with lots of hair and a tight fitting white hat, and then the officer had the gun on him." She further testified that the officer was on one side of a hedge and the colored man was on the other side of the hedge; that the officer backed towards Madison street and the colored man followed him on the other side of the hedge; that when they got to the corner of the hospital they passed out of her sight; that a couple of minutes afterwards she heard two shots in succession; that she went to the room of Mr. Bain, and, looking out the window, she saw the officer lying on the ground; and that she assisted in carrying the officer to the operating room. It was proven, further, by the Commonwealth that the pistol of Hatchell had been torn from the swivel which attached it to a belt and has never been found.

The defendant seeks to controvert the theory of the Commonwealth by the establishment of an alibi. His main reliance is that he came to Petersburg during the early morning hours of July 18th, on the Silver Meteor, a train operated by the Seaboard Air Line; that he was not the driver of the Studebaker car, and, therefore, could not have been the man who drove the car and who killed Hatchell. This theory of an alibi is attacked by Officers Beasley and Hubbard who testified that the defendant stated that he came to Petersburg on an International truck. The question of whether an alibi was proven was a question for the jury. It is manifest the jury accepted the statement of the officers instead of defendant's statement. That was the province of the jury, and this court will not seek to pass upon the credi-

bility of the witnesses where their evidence is not inherently incredible.

A careful analysis of the evidence leads to the conclusion that the guilt of the defendant has been proven beyond a reasonable doubt, and that the verdict of guilty of murder in the first degree, rendered by the jury, is warranted by the evidence adduced.

The third assignment of error is without merit.

Though not involved either in the proceedings below or in this court, the record does disclose that when the defendant was first arrested he was inhumanly assaulted by the police officers who had him in charge. Such conduct upon the part of the officers of the law merits our utter disapproval. The assault made upon the defendant was a cowardly one, uncalled for and beyond the realm of justification.

For the reasons stated, the judgment of the trial court will be affirmed.

*Affirmed.*