COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Raphael, White and Senior Judge Petty
Argued at Richmond, Virginia


JEFFREY WAYNE KERR

                                                  MEMORANDUM OPINION* BY
v.        Record No. 1330-22-2         JUDGE KIMBERLEY SLAYTON WHITE
                                                          JULY 25, 2023
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ORANGE COUNTY
David B. Franzen, Judge

(Christian A. Brashear, on briefs), for appellant.  Appellant
submitting on briefs.

Rebecca M. Garcia, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


        The trial court convicted Jeffrey Wayne Kerr of violating a protective order, a misdemeanor

in violation of Code § 16.1-253.2.[1]  Kerr argues that the trial court erred by accepting M.K.'s

testimony as it "was not reliable."  He further asserts that the evidence was insufficient to support

his conviction.  Finally, he contends that the trial court abused its discretion by sentencing him to an

active term of five months in jail "given the de minimis nature of the violation."  Finding no error,

we affirm the trial court's judgment.

                                          BACKGROUND

        "In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial."  *Meade v. Commonwealth*,

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] The appellant originally was indicted for a felony violation of Code § 16.1-253.2.
However, when the Commonwealth failed to introduce prior convictions, the charge was reduced
to a misdemeanor.

74 Va. App. 796, 802 (2022) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)). "Accordingly, we regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence." *Id.* (quoting *Gerald*, 295 Va. at 473).

Kerr and Stacey Thompson had a daughter together, M.K. Thompson had a protective order against Kerr prohibiting Kerr from having contact of "any kind" with her. In addition, all visits between Kerr and M.K. were required to be arranged through Kerr's parents. On May 8, 2021, M.K. visited Kerr at his parents' house. During the visit, Kerr gave M.K. a necklace that contained a photograph of M.K. and told her to give it to Thompson from him as a Mother's Day present. He tucked the necklace into a mesh pocket on the side of M.K.'s backpack.

Kerr's father took M.K. back to Thompson's residence following the visitation with Kerr. He told Thompson that there was a necklace inside M.K.'s backpack, but he did not tell her it was from Kerr. Thompson found the necklace in M.K.'s backpack. After M.K. told her that it was a gift from Kerr to Thompson, she reported the incident as a violation of the no contact provision of the protective order.

At trial, the Commonwealth relied upon the testimony of M.K. and Thompson. At the outset, the court questioned then-four-year-old M.K. to determine her competency to testify. In response, M.K. gave the trial court examples of telling the truth and telling a lie and affirmed that she understood the difference. After agreeing with defense counsel that Thompson had told M.K. what to say at trial, M.K. emphasized that Thompson had urged her to tell the truth. M.K. affirmed that if Thompson had told her to say something that was not true, she would not do it. Defense counsel objected to M.K. testifying, arguing that she had been "coached" by Thompson. The Commonwealth countered that M.K. had "been prepared for trial, but not coached." The trial court held that M.K. was competent to testify and had not "been coached to such an extent that she was simply going to parrot the information that was provided to her by" another person.

For the defense, Kerr's mother testified that she was the one who purchased the necklace for M.K. to give to Thompson for Mother's Day. Kerr testified that although he had given M.K. a gold necklace for her birthday, he had "no involvement" with the purchase of the similar silver necklace his mother purchased. However, Kerr did admit that he placed the silver necklace into the pocket of M.K.'s backpack.

In weighing the credibility of the witnesses, the trial court accepted M.K.'s testimony and found that she "demonstrated veracity and credibility in terms of what she saw and what she heard from Mr. Kerr." The trial court found that M.K. was credible, "sincere and open," and "made no attempt to conceal." Further, the court was impressed by M.K.'s "ability to observe and to be able to distinguish between the truth and falsity." The court held that even if Kerr's mother had purchased the necklace, Kerr placed the necklace in M.K.'s bag and the necklace was in fact from Kerr to Thompson. Finally, the court held that Kerr's action of giving the necklace to Thompson through M.K. violated the no contact provision of the protective order and, therefore, convicted Kerr of the offense.

At sentencing, the trial court considered Kerr's four previous convictions for violating a protective order. The Commonwealth, emphasizing Kerr's repeated violations, asked the trial court to impose the maximum penalty of 12 months in jail. Characterizing the contact as "de minimis," Kerr urged the trial court to impose no more than 30 days. The trial court found the case "troubling," noted that Kerr "avoided a felony conviction only because the prior convictions were not admitted until after" he was convicted of this charge, and expressed concern that Kerr repeatedly violated the terms of protective orders. The trial court sentenced Kerr to 12 months in jail with 7 months suspended. Kerr appeals.

ANALYSIS

"In reviewing a challenge to the sufficiency of the evidence to support a conviction, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Melick v. Commonwealth*, 69 Va. App. 122, 144 (2018) (quoting *Kelly v. Commonwealth*, 41 Va. App. 250, 257 (2003) (en banc)). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Raspberry v. Commonwealth*, 71 Va. App. 19, 29 (2019) (quoting *Burrous v. Commonwealth*, 68 Va. App. 275, 279 (2017)). "In conducting our analysis, we are mindful that 'determining the credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact, who has the ability to hear and see them as they testify.'" *Id.* (quoting *Miller v. Commonwealth*, 64 Va. App. 527, 536 (2015)). "Thus, we will affirm the judgment of the trial court unless that judgment is 'plainly wrong or without evidence to support it.'" *Id.* (quoting *Kelly*, 41 Va. App. at 257).

I.

Kerr's first assignment of error argues that M.K.'s "testimony was not reliable." "The fact finder, who has the opportunity to see and hear the witnesses, has the sole responsibility to determine their credibility, the weight to be given their testimony, and the inferences to be drawn from proven facts." *Rams v. Commonwealth*, 70 Va. App. 12, 26-27 (2019) (quoting *Hamilton v. Commonwealth*, 279 Va. 94, 105 (2010)). "Where credibility issues are resolved by the [fact finder] in favor of the Commonwealth, those findings will not be disturbed on appeal unless plainly wrong." *Smith v. Commonwealth*, 56 Va. App. 711, 718 (2010). "[T]his [C]ourt will not seek to pass upon the credibility of the witnesses where their [testimony] is not inherently

- 4 -

incredible." *Gerald*, 295 Va. at 486 (first and second alterations in original) (quoting *Rogers v. Commonwealth*, 183 Va. 190, 201-02 (1944)). "Evidence is not 'incredible' unless it is 'so manifestly false that reasonable men ought not to believe it' or 'shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Id.* at 487 (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)).

Kerr asserts that M.K. was an inherently incredible witness because her testimony conflicted with his and his mother's testimony. He also asserts that M.K. "was not a truthful witness" because she testified that she had had her birthday necklace for 40 years, an impossibility as she was only 4 years old at trial.

"The trier of fact is 'free to believe or disbelieve, in part or in whole, the testimony of any witness.'" *Washington v. Commonwealth*, 75 Va. App. 606, 616 (2022) (quoting *Bazemore v. Commonwealth*, 42 Va. App. 203, 213 (2004) (en banc)). "Similarly, '[i]n its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt.'" *Id.* (alteration in original) (quoting *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011)). Thus, the trial court permissibly rejected the testimony of Kerr and his witness and accepted M.K.'s account of the events. Further, the fact that M.K. likely misspoke or was confused when she testified that she had had the birthday necklace for 40 years does not render her testimony entirely unbelievable. "The fact finder is not required to believe all aspects of the testimony of a witness." *Parham v. Commonwealth*, 64 Va. App. 560, 565 (2015). "Instead, it may 'accept the parts of a witness' testimony it finds believable and reject other parts as implausible.'" *Id.* (quoting *Moyer v. Commonwealth*, 33 Va. App. 8, 28 (2000) (en banc)). Accordingly, the record supports the trial court's credibility determination.

## II.

Kerr argues in his second assignment of error that the trial court erred by convicting him of violating the protective order "when his only action in furtherance of said alleged violation was in placing the locket in the bag of his daughter at his mother's request." The trial court rejected Kerr's version of the events and accepted M.K.'s testimony that Kerr told her to give Thompson the necklace.

A person is guilty of violating a protective order issued under Code § 16.1-279.1 "when such violation involves a provision of the protective order that prohibits . . . contacts by the respondent with the allegedly abused person." Code § 16.1-253.2(A). "'Contact,' in pertinent part, means 'an instance of establishing communication with someone.'" *Green v. Commonwealth*, 72 Va. App. 193, 203 (2020) (quoting *Contact*, *Webster's Third New International Dictionary* (2002)). Prohibited contacts are "intentional acts . . . that intentionally pierce the protective barrier between the petitioner and the respondent fashioned by the protective order." *Id.* (alteration in original) (quoting *Elliott v. Commonwealth*, 277 Va. 457, 464 (2009)).

Here, the protective order required Kerr to "have no contact of any kind" with Thompson. Nevertheless, Kerr intentionally put the necklace in M.K.'s backpack with instructions to give it to Thompson, from him, for Mother's Day. The trial court permissibly rejected Kerr's contention that the necklace was a gift to Thompson from his mother. By sending the necklace to Thompson, through M.K., Kerr violated the no contact provision of the protective order. Thus, the Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that appellant was guilty of violating a protective order.

III.

Kerr argues in his final assignment of error that the trial court abused its discretion in imposing an active sentence of five months in jail. "We review the trial court's sentence for abuse of discretion." *Scott v. Commonwealth*, 58 Va. App. 35, 46 (2011). "[W]hen a statute prescribes a maximum imprisonment penalty and the sentence does not exceed that maximum, the sentence will not be overturned as being an abuse of discretion." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016) (quoting *Alston v. Commonwealth*, 274 Va. 759, 771-72 (2007)).

The sentence the trial court imposed was within the range set by the legislature. *See* Code §§ 16.1-253.2 and 18.2-11. It was within the trial court's purview to consider any mitigating circumstances, such as what Kerr characterizes as the "de minimis" nature of the contact. *Keselica v. Commonwealth*, 34 Va. App. 31, 36 (2000). It was also within the trial court's purview to consider the fact this was Kerr's fifth violation of a protective order, suggesting that Kerr repeatedly disregarded court orders. "Criminal sentencing decisions are among the most difficult judgment calls trial judges face." *Minh Duy Du*, 292 Va. at 563. "Because this task is so difficult, it must rest heavily on judges closest to the facts of the case— those hearing and seeing the witnesses, taking into account their verbal and nonverbal communication, and placing all of it in the context of the entire case." *Id.* Accordingly, the trial court did not abuse its discretion in imposing Kerr's sentence.

CONCLUSION

The record fully supports the trial court's credibility determination and its finding that Kerr violated the no contact provision of the protective order. Further, we find no abuse of discretion with the trial court's sentencing decision. Accordingly, we affirm the trial court's judgment.

*Affirmed.*