COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Beales and Athey

GARY DAVID MORRIS

                                          MEMORANDUM OPINION[*]

v.      Record No. 1265-24-2                       PER CURIAM
                                            OCTOBER 21, 2025

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE
Claude V. Worrell, II, Judge

(J. Lloyd Snook, III; Snook & Haughey, P.C., on brief), for
appellant.

(Jason S. Miyares, Attorney General; William K. Hamilton, Senior
Assistant Attorney General, on brief), for appellee.

Following a jury trial in the Circuit Court of the City of Charlottesville ("trial court"), Gary

David Morris ("Morris") was convicted of rape, in violation of Code § 18.2-61. On appeal, Morris

contends that the trial court erred in denying his motion to strike based on the inherent incredibility

of the victim's testimony. Finding no error, we affirm.[1]

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Having examined the briefs and record in this case, the panel unanimously agrees that
oral argument is unnecessary because "the appeal is wholly without merit." *See* Code
§ 17.1-403(ii)(a); Rule 5A:27(a).

I. BACKGROUND[2]

On May 5, 2023, Morris was charged with the rape of B.[3] The matter was set for trial by jury on March 5, 2024. After conducting voir dire and swearing in the jury, both parties presented opening statements. The Commonwealth then called B. as its first witness. She testified that she worked as a registered nurse and was neighbors with Morris. Because B. lived alone, she would occasionally ask Morris to assist her with household repairs. On July 10, 2022, B. noticed a hole in the ceiling of her basement and a leak coming from an upstairs bathroom. Early that evening, B. went to Morris's home and asked if he could look at the leak. Morris came over shortly thereafter, and B., who was wearing a t-shirt and "athletic-type boxer—biker kind of shorts," let him in. B. had three or four beers that day, but she testified that she did not feel intoxicated and did not drink while Morris was at her house.

Once inside, B. turned on the bathroom water and went downstairs to look for the leak. Morris yelled to her that he saw the leak. When B. returned to the bathroom and turned off the water, she was "startled" to find Morris standing directly behind her. As she started to leave the bathroom, Morris "grabbed" the back of her shorts, pulled them down, and "shoved his penis inside [her] and then he shoved [her] against the sink" before she could "get the words" out. She testified that Morris pulled down her shorts and underwear "probably just below [her] butt cheeks" and penetrated her vagina from behind. She clarified that her vagina "was not covered by anything."

She testified that while the rape was occurring, she had "some chaotic kind of rambling things going through [her] brain" and was "stunned and taken by surprise." She testified that she "absolutely did not" consent to having sexual intercourse with Morris but acknowledged that she

---

[2] On appeal, we review the evidence "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Konadu v. Commonwealth*, 79 Va. App. 606, 609 n.1 (2024) (quoting *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)).

[3] To protect the victim's privacy, we refer to her by a single initial.

did not say anything or otherwise physically resist him. Once Morris removed his penis from B., she put her shorts back on and left the bathroom, followed by Morris. He said nothing as he left the house. After Morris left, B. closed the front door and began crying. She stated that after Morris left, she was "completely stunned and in a state of shock."

B. testified that nearly a week after the assault, she was at home when Morris texted her that they "need[ed] to talk." B. did not reply to the message. Shortly after Morris texted her, B. testified that Morris walked over to her home and tried to convince her "that he didn't do anything wrong." She stated that he "apologized multiple times" to her and that "he was sorry and that [she] had misunderstood" what had happened. The next day, she went to law enforcement and reported the rape that had occurred a week prior.[4]

On cross-examination, B. stated that her legs were "close together" when the assault occurred and that Morris "shoved" his penis into her vagina. When asked why she did not say anything or physically resist Morris during the rape, she testified that she "started to say what the F" but "then when he was in me that quickly your brain goes to this place of shock and horror and trauma." Because of this, B. testified that she "was physically unable to react in that moment." On re-direct examination, she reiterated that during the rape she "couldn't get the words out" and compared the experience to a "car accident" where "you freeze when you have something traumatic happen." She even stated that she "thought [her] response would be a lot different if [she] was ever raped."

---

[4] That night and over the next few days, B. told two other people about the rape but was still apprehensive about going to a hospital or involving law enforcement. Three days after the rape, she ultimately went to a hospital and was examined.

During Morris's case-in-chief, Morris testified in his own defense.[5] He testified that on July 10, 2022, B. was wearing white jeans that went down to her ankles, not athletic shorts. He claimed that while he was in B.'s house, B. consumed alcohol. Morris testified that after he figured out where the leak was and determined how to fix it, B. hugged him, but then things "went a little further." According to Morris, B. went to her bedroom, took her clothes off, put vaginal "lube" on herself, and lay on the bed with her "legs apart" and "knees in the air." Morris testified that he told her that she was drunk and that "we can't do this, and this can't happen." According to Morris, B. then dressed herself in the "biker shorts" and he left. Morris testified that he did not grab B., pull down her pants, or have sexual intercourse with her. He also testified that he had not had an erection in the last 12 years.

Next, Morris called two character witnesses, who testified that he had a good reputation in the community for truthfulness. Then the defense rested. Morris moved to strike the charge, which the trial court denied. After closing arguments, the trial court instructed the jury. The jury retired to deliberate and returned with a unanimous verdict finding Morris guilty of rape. Morris moved to set aside the verdict, which the trial court denied. The trial court sentenced Morris to 30 years of incarceration with 20 years suspended. Morris appealed.

## II. ANALYSIS

Morris contends that the evidence was insufficient to convict him of rape because there was no corroboration of B.'s testimony and that the act of penetrating B. from behind in the bathroom was "physically impossible." We disagree.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support

---

[5] Prior to this, Morris called an expert witness who analyzed DNA from B.'s examination, but "there was not enough information to make any comparison to any individuals."

it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)). "Additionally, in evaluating the sufficiency of the evidence, 'we view the evidence in the light most favorable to the prevailing party below, the Commonwealth, and grant it the benefit of all fairly deducible inferences.'" *Sample v. Commonwealth*, 303 Va. 2, 16 (2024) (quoting *Winston v. Commonwealth*, 268 Va. 564, 609 (2004)).

"Determining the credibility of witnesses . . . is within the exclusive province of the jury, which has the unique opportunity to observe the demeanor of the witnesses as they testify." *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) (alteration in original) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993)). "The fact finder, who has the opportunity to see and hear the witnesses, has the *sole* responsibility to determine their credibility, the weight to be given their testimony, and the inferences to be drawn from proven facts." *Commonwealth v. McNeal*, 282 Va. 16, 22 (2011) (quoting *Commonwealth v. Taylor*, 256 Va. 514, 518 (1998)). An appellate court "will not seek to pass upon the credibility of the witnesses where their evidence is not inherently incredible." *Gerald v. Commonwealth*, 295 Va. 469, 486 (2018) (quoting *Rogers v. Commonwealth*, 183 Va. 190, 201-02 (1944)). "Evidence is not 'incredible' unless it is 'so

manifestly false that reasonable men ought not to believe it' or 'shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Id.* at 487 (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)).

Here, the trial court did not err in denying Morris's motion to strike the evidence. Morris's claim that B.'s account lacks corroboration ignores the settled law in Virginia that in a case involving a sexual offense, the defendant may be convicted on the sole and uncorroborated testimony of the complainant. *See Wilson v. Commonwealth*, 46 Va. App. 73, 88 (2005) (noting that because sexual crimes "are typically clandestine in nature, seldom involving witnesses to the offense except the perpetrator and the victim, a requirement of corroboration would result in most sex offenses going unpunished"). Likewise, the record does not support Morris's claim of physical impossibility such that B.'s account is rendered inherently incredible. Although Morris argues that B. testified "that her legs had not been separated," she merely indicated during her testimony that her legs were "close together," not completely closed. Similarly, Morris argues that even if the victim was wearing tight shorts as she testified to—or, according to his testimony, her "white jeans"—the assault was impossible. But B. stated that Morris pulled down her shorts and underwear below her buttocks before penetrating her. Finally, we note that the jury was aware that B. did not report the rape to anyone until days after it occurred. This was a circumstance for the jury to weigh in light of the evidence as a whole but it did not render B.'s testimony inherently incredible. *See, e.g.*, *Love v. Commonwealth*, 18 Va. App. 84, 85, 89-90 (1994) (affirming convictions where thirteen-year-old victim did not report sexual abuse for seven years).

Accordingly, B.'s testimony was not inherently incredible. As such, we will not set aside the jury's credibility determination on appeal.[6] *Gerald*, 295 Va. at 486-87.

---

[6] As for Morris's account of the incident and his claim that he had not been able to achieve an erection for about 12 years, the jury could have believed he was lying, rejecting this testimony as

III. Conclusion

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed.*

---

self-serving and intending to conceal his guilt. *See Washington v. Commonwealth*, 75 Va. App. 606, 615-16 (2022) ("[T]he fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt.").