UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges AtLee and Frucci

KENNETH JOSEPH DEFAZIO

v.      Record No. 1290-24-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*]
PER CURIAM
OCTOBER 28, 2025

FROM THE CIRCUIT COURT OF NORTHAMPTON COUNTY
Leslie L. Lilley, Judge Designate

(Charles E. Haden, on brief), for appellant.

(Jason S. Miyares, Attorney General; John A. Fisher, Assistant
Attorney General, on brief), for appellee.

Following a jury trial, Kenneth Joseph Defazio was convicted of aggravated sexual battery

of a victim less than 13 years old, second offense, custodial indecent liberties, second offense, and

contributing to the delinquency of a minor. On appeal, Defazio asserts that the circuit court wrongly

denied his motion to strike because the victim's testimony was inherently incredible. For the

following reasons, we affirm the circuit court's judgment.[1]

BACKGROUND

We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing

party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting

*Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires that we "discard the

evidence of the accused in conflict with that of the Commonwealth, and regard as true all the

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] After examining the briefs and record in this case, the panel unanimously holds that oral argument is unnecessary because "the appeal is wholly without merit." Code § 17.1-403(ii)(a); Rule 5A:27(a).

credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 323-24 (2018)).

In July of 2020, A.S.[2] was ten years old when she and her family went on a camping trip. The other persons on the trip were A.S.'s aunt Kimberly Givens, her aunt's then-boyfriend Defazio, her twin cousins Alicia ("Lee Lee") and Ashley, her cousin I.G., and her aunt's son-in-law Brendon. The group stayed in a cabin that had two rooms and a front porch; the room that connected to the entrance on the front porch contained a large bed and had an open floor plan with the kitchen. A wall and a doorway separated that room from a smaller back room, which had four bunk beds.

On the first night of the vacation, Lee Lee fell and began bleeding. Givens and Ashley took Lee Lee to meet her fiancé in Virginia Beach, so that he could take her to the hospital. Givens left A.S. and I.G. with Defazio and Brendon. A.S. had previously been around Defazio at Givens's home and trusted him.

After Givens and her two daughters left the cabin, everyone else began to go to bed. Defazio asked A.S. to "lay down with him." At that point, Brendon and I.G. were on a bunk bed in the smaller room. A.S., who was wearing a one-piece romper, laid down on the bed in the front room with Defazio, where she fell asleep. A.S. was awakened by Defazio "touching [her] inappropriately" on her clothes on her chest and vagina. Defazio rubbed her "back and forth" for about ten minutes, which made her feel "uncomfortable." A.S. did nothing because she was "scared" of Defazio. During the ten-minute period, A.S. also felt pain as Defazio penetrated her "rear end" in a back-and-forth motion with his "private parts." A.S. did not cry out for help or tell Brendon or I.G. what Defazio had done because she "didn't have that kind of relationship with Brendon and I didn't really think [I.G.] would understand it anyway."

_____

[2] We use the initials, rather than names, to protect the privacy of the victim and other minor mentioned throughout the opinion.

- 2 -

A.S. then pretended to wake up and got up to get water. When she returned, Defazio asked her if she had been awake for the last hour. A.S. said that she had not because she was "scared to tell him the truth." Defazio asked A.S. to lie back down with him. "Out of fear," A.S. sat on the bed, but did not lie down. She remained seated until Givens returned to the cabin between 11:00 p.m. and midnight. Upon her return, Givens found Defazio and A.S. both awake on the bed in the front room. A.S. hugged Givens and then went to the back room where she would have a bed to herself. Givens did not think anything was wrong, nor did she perceive anything out of the ordinary during the remainder of the vacation. Defazio and the twins left after two days, and the rest of the group drove back at the end of the vacation.

A.S. testified that she did not tell Givens what had happened because "it was kind of hard to talk about, especially since . . . it just happened. I didn't really want to ruin anything, like the trip . . . ." After the trip, A.S., who had been close to Givens, stopped going to Givens's house. A.S. explained that she felt "betrayed" and did not want to go to Givens's home while Defazio was present.

Givens testified that in the several months after the vacation, Defazio became "a little distant," but A.S. "changed drastically. She stopped coming around as much." Richard Swayze, A.S.'s father, similarly testified that A.S. "didn't want to go nowhere. She didn't want to dress. She stayed to herself. She started having anxiety attacks, panic attacks." Shortly after the camping vacation, A.S. "started dressing completely different" and "behavioral issues slowly crept in . . . ."

Sometime in late 2021 or early 2022, A.S. was hospitalized at a facility that treated children for emotional problems. A.S. was prescribed a medication to deal with anxiety and depression. She hated taking medicine and was still in therapy at the time of the trial, although she "doesn't like to go still."

A few months after the vacation, A.S. told her best friend what Defazio had done to her in the cabin. Her friend encouraged her to tell her parents. It "was bothering [A.S.] a lot and get[ting] in the way of things," so she told her mother in October of 2021 what Defazio had done. A.S. did not disclose the incident to her parents until then because she "didn't want to talk about it" and felt ashamed. Her mother told A.S.'s father about the abuse, and he called the police.

Barry Randall, an investigator for the Northampton County Sheriff's Office, investigated the case and set up a forensic interview for A.S. in November of 2021. Catherine Tricomi, a trained child forensic interviewer, met A.S. at that time. During that interview, A.S. told Tricomi about Defazio touching her but did not mention the anal intercourse. A.S. testified that she was scared and thus did not want to talk about that part of the abuse during the interview. A.S. acknowledged that several times during that interview she had said nothing else occurred or that she could not recall.

In July 2023, A.S. spoke with the Commonwealth's Attorney, Randall, and a victim/witness advocate to prepare for the trial. During that interview, A.S. disclosed the anal penetration by Defazio. A.S. stated that "penetration" was mentioned, and at that point, A.S. discussed that for "kind of the same reason . . . I told my parents when I did, because it was bothering me." A.S. described the questions during the Commonwealth's interview as "an open question" and corrected the Commonwealth's Attorney when he referred only to what Defazio had done with his hands. Tricomi also conducted a second forensic interview with A.S. in August of 2023.

At trial, Tricomi gave expert testimony on forensic interviewing and delayed disclosures by children. Tricomi stated that 55-69% of children delay reporting sexual assaults. Tricomi explained that children often feel ashamed or embarrassed and fear they will not be believed or will get in trouble and may still have contact with the offender. Tricomi had seen such delays in her own practice. Additionally, it was "not unusual at all" for children to engage in "stages of disclosure."

While agreeing that not all reported acts of sexual abuse are true, Tricomi stated that inconsistencies in a child's account are not "really related" to delays in disclosures.

At the close of the Commonwealth's case, Defazio moved to strike the evidence; the circuit court denied his motion. Defazio was ultimately convicted of aggravated sexual battery of a victim less than 13 years old, second offense, custodial indecent liberties, second offense, and contributing to the delinquency of a minor.[3] This appeal follows.

## ANALYSIS

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

"Determining the credibility of witnesses . . . is within the exclusive province of the jury, which has the unique opportunity to observe the demeanor of the witnesses as they testify." *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) (alteration in original) (quoting *Lea v.*

---

[3] In 2009, Defazio was convicted of a previous sexual offense against a child in New York. The parties stipulated that the offense was substantially similar to the offenses listed in Code § 18.2-67.5:2.

*Commonwealth*, 16 Va. App. 300, 304 (1993)). "The fact finder, who has the opportunity to see and hear the witnesses, has the *sole* responsibility to determine their credibility, the weight to be given their testimony, and the inferences to be drawn from proven facts." *Commonwealth v. McNeal*, 282 Va. 16, 22 (2011) (quoting *Commonwealth v. Taylor*, 256 Va. 514, 518 (1998)). An appellate court "will not seek to pass upon the credibility of the witnesses where their evidence is not inherently incredible." *Gerald v. Commonwealth*, 295 Va. 469, 486 (2018) (quoting *Rogers v. Commonwealth*, 183 Va. 190, 201-02 (1944)).

Defazio acknowledges that in a case involving sexual offenses the defendant may be convicted "on the sole and uncorroborated testimony of the complainant."[4] *See Poole v. Commonwealth*, 73 Va. App. 357, 368 (2021). Defazio maintains, though, that the Commonwealth provided "no credible explanation why A.S. waited fourteen months to tell her parents about the alleged acts of sexual abuse. . . . [T]he unreasonable delay in making an outcry rendered A.S.'s allegations incredible as a matter of law . . . ."

Defazio's arguments fall well short of showing that the evidence failed or that A.S.'s testimony was inherently incredible. First, we note that Defazio does not assert that A.S.'s testimony failed to establish a particular element of the offenses, but that it was wholly untrue. Secondly, Defazio's assertion that the Commonwealth failed to provide an explanation for A.S.'s delay in telling her parents about the abuse is incorrect. Tricomi, who conducted two forensic interviews with A.S., testified that as many as 69% of children delay reporting sexual abuse out of shame, embarrassment, or fear they will not be believed or will get in trouble. Tricomi had

---

[4] Though he acknowledges this, Defazio still argues that his motion to strike should have been granted because the Commonwealth did not present any eyewitnesses to the sexual abuse or forensic evidence. Considering that sexual offenses "are typically clandestine in nature, seldom involving witnesses to the offense except the perpetrator and the victim, a requirement of corroboration would result in most sex offenses going unpunished." *Poole v. Commonwealth*, 73 Va. App. 357, 369 (2021) (quoting *Wilson v. Commonwealth*, 46 Va. App. 73, 88 (2005)).

observed such delays in her own practice. A.S.'s testimony that she had a hard time talking about Defazio's actions when her aunt returned to the cabin or in the ensuing months bore out Tricomi's expert description of the reasons minors often delay in reporting sexual crimes. Moreover, A.S. explained that she was scared and embarrassed.

We have recognized that a child victim's "youth, fright and embarrassment certainly provide[] the jury with an acceptable explanation for" delayed disclosures. *Corvin v. Commonwealth*, 13 Va. App. 296, 299 (1991); *see Wilson v. Commonwealth*, 46 Va. App. 73, 88 (2005) (holding that 12-year-old victim's delayed report due to her fear of the defendant and "shame and embarrassment at what was happening to her" was consistent with human experience); *Love v. Commonwealth*, 18 Va. App. 84 (1994) (holding that 13-year-old victim's 7-year delay in reporting ongoing sexual abuse did not render her testimony inherently incredible). It was for the jury to weigh A.S.'s delay in disclosing the incident in evaluating her testimony. The mere fact of a delayed disclosure or inconsistent statements "does not necessarily render the testimony unworthy of belief." *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006); *see Grimaldo v. Commonwealth*, 82 Va. App. 304, 323 (2024) (stating that "delayed reporting does not render a sexual assault victim per se unworthy of belief"). The fact that A.S., as well as her father and aunt, testified that her behavior changed drastically after the cabin trip was a circumstance that a reasonable trier of fact could rely upon to credit her testimony. Likewise, A.S.'s failure to cry out for help in the cabin was a circumstance for the jury to assess.

Defazio also relies on the fact that A.S. did not mention the anal intercourse during her first forensic interview with Tricomi. Again, any inconsistencies (if there were any) in her account were for the jury to resolve. A reasonable trier of fact could credit A.S.'s testimony, given Tricomi's testimony that "it is not unusual at all" for child victims to make disclosures in "stages." Likewise, a reasonable trier of fact could believe A.S.'s testimony that she first disclosed the anal intercourse

in her pretrial interview with the Commonwealth's Attorney for "kind of the same reason . . . I told my parents when I did, because it was bothering me." The record supports the circuit court's conclusion that the Commonwealth presented a prima facie case for consideration by the fact finder, and therefore, the circuit court did not err by denying Defazio's motion to strike.

CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*