COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Causey, White and Frucci


IGAL VONDALE DAVIS

v.      Record No. 1412-24-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION*
PER CURIAM
MARCH 10, 2026


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Bryant L. Sugg, Judge

(Charles E. Haden, on brief), for appellant.

(Jason S. Miyares,[1] Attorney General; John A. Fisher, Assistant
Attorney General, on brief), for appellee.


Following a bench trial, the Circuit Court of the City of Newport News convicted Igal

Vondale Davis of aggravated malicious wounding. The circuit court sentenced Davis to 20 years

in prison, with 12 years suspended.[2] On appeal, Davis argues that he was guilty only of unlawful

wounding because the evidence failed to prove he acted with malice. Finding no error, we affirm

the circuit court's judgment.[3]

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

[2] Davis previously appealed his conviction to this Court, which affirmed on the ground
that the trial transcript was indispensable to an adjudication of Davis's appeal but was not part of
the record. *Davis v. Commonwealth*, No. 1057-23-1 (Va. Ct. App. June 28, 2024) (order). On
August 22, 2024, we granted Davis's motion for a delayed appeal under Code § 19.2-321.1(a).

[3] Having examined the briefs and record in this case, the panel unanimously agrees that
oral argument is unnecessary because "the appeal is wholly without merit." *See* Code
§ 17.1-403(ii)(a); Rule 5A:27(a).

BACKGROUND[4]

Davis is the father of two of B.H.'s[5] children; they shared custody of the children. On January 15, 2022, B.H. and her friend, Ms. Eaddy, were visiting at Davis's home. B.H. and Davis were arguing about "an incident that occurred the night before." When B.H. told Davis to "[a]sk [his] friend what happened last night," Davis got upset, "ran towards [her] with a bottle, and hit [her] in [her] head." B.H. described it as a "full" Heineken bottle, from which Davis had only taken "a couple of drinks." Prior to Davis striking her, B.H. had not struck or attempted to strike Davis at any point that day.

Davis and Eaddy drove B.H. to the hospital. Due to the extensive injuries to B.H.'s face, she was taken to a second hospital and underwent a six-hour surgery. Newport News Police Officer Calhoun spoke with B.H. at that hospital to investigate a reported assault. Officer Calhoun described her appearance thusly: "[B.H.] was laying on the gurney, and she had a malicious wounding from the top left of her skull down, like . . . 11:00 o'clock to 4 o'clock down to her lip, and it was split. Her head was split open, and blood was rushing and gushing into her eye." Officer Calhoun took several photos of B.H., which the Commonwealth introduced at trial. After being "upset at the moment" and "hesitant to talk," B.H. eventually gave Officer Calhoun information about what had happened to her.

B.H. testified that she would always have a scar from her injury and that her "left eye doesn't really close all the way, and so at night I have to apply—it's a certain ointment I have to

---

[4] We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). In doing so, we discard any evidence that conflicts with the Commonwealth's evidence, and regard as true all the credible evidence favorable to the Commonwealth and all inferences that can be fairly drawn from that evidence. *Cady*, 300 Va. at 329.

[5] We use initials, rather than names, to protect the privacy of the victim.

use every night because I'll get an infection in the left side of my eye." B.H.'s left vision was impaired, and she was scheduled for additional surgery. The attack also injured B.H.'s arm.

After the Commonwealth rested, the circuit court denied Davis's motion to strike, which challenged the sufficiency of the evidence, "specifically the injuries." Testifying on his own behalf, Davis stated that he and B.H. had two children together but were no longer in a relationship.[6] But B.H. could come to his home to see their children. Davis testified that he and B.H. were arguing about an incident that occurred the prior night while he was "sitting down . . . playing a video game" with his son. Then, B.H. "walked past" Davis and threw an empty bottle that she had been drinking at him, but he "dodged it." According to Davis: "I reacted instantly, and I threw the bottle at her." Davis elaborated that "it was pretty much instant" that he threw his bottle; B.H. was "pretty close" when he "retaliated" by throwing his bottle at her. Davis testified that he was not intoxicated. Davis apologized to B.H. and testified he was going to some programs and was "about to enroll" in an anger management program.

The defense renewed its motion to strike, arguing that "it was an instantaneous reaction and that would preclude malice." Defense counsel averred that Davis was instead guilty of unlawful wounding. The circuit court denied the motion, noting that "the evidence is somewhat in conflict between the alleged victim's recitation of it, the events, not a lot," but based on the testimony, the Commonwealth had presented sufficient evidence.

In closing argument, defense counsel again asserted that the evidence did not prove malice and that Davis should be convicted of unlawful wounding. The circuit court found that the evidence on the aggravated malicious wounding charge was sufficient but said it would "withhold the actual finding today, pending the presentence investigation and report."

---

[6] Davis said that B.H. was pregnant but expressed uncertainty as to whether the child "is mine or not because of the situation."

- 3 -

Defense counsel then stated that, "just to have the record," he would call Davis's 17-year-old son to testify about the incident on the prior night.[7] Davis's son (who was not B.H.'s child) had been living with Davis since January 2022 and was helping look after the younger children. He testified that B.H. visited regularly but her visits caused "commotion" and that "[w]hen [B.H.] drinks and stuff, she starts stuff, arguments. She tears up the house. She tries to fight my dad." Before B.H.'s injury, he stated he had never seen Davis hit B.H. or throw anything at her.

Davis's son testified that on the night before the incident, B.H.'s two "family friends" were drinking. Davis's son heard a commotion and when he went upstairs saw the two friends fighting, one of whom was naked. When he entered his room, he found B.H. on the floor naked. He told Davis what he had seen, and Davis was unhappy about it.

He further testified that, on the night of the incident, he tried to break up the argument between Davis and B.H. He did "not [know] how she got hit. I just know something hit her." He acknowledged that Davis threw a bottle at B.H., but only after "she threw something at him."

At sentencing, the parties presented evidence relevant both to the court's formal adjudication of guilt and Davis's sentence. During the testimony of one of two defense character witnesses, defense counsel queried: "You know what happened? The young lady threw a bottle, missed him, and he took the bottle and threw it back." The witness responded that she could not "visualize that" because Davis would not "hurt . . . a fly" and was "too passive."

In argument, defense counsel challenged the proof of malice, suggesting that in a murder case Davis would have been guilty only of manslaughter "because it happened in such a split-second that it was just a reaction." Regarding Davis's sentence, defense counsel asserted that Davis "told exactly what happened. She threw the bottle. It missed. I picked the bottle up.

---

[7] It is not entirely clear what the purpose of his testimony was, but the Commonwealth had no objection to it and the circuit court allowed it.

I threw it at her." And, contrary to Davis's own testimony, defense counsel argued that Davis was in fact drunk at the time of the incident. In response, the Commonwealth pointed out that defense counsel "completely forgot about or failed to mention what [B.H.] said happened." B.H. and Davis gave conflicting accounts about what occurred before he struck her with the beer bottle, "which obviously the Court has to resolve in terms of what you believe." The Commonwealth argued that the photos of B.H.'s injuries were "much more consistent" with her testimony. And if the circuit court credited B.H.'s testimony, "malice is clearly present in this case, and this is an aggravated malicious wounding."

In sentencing Davis, the circuit court acknowledged the competing versions of events but concluded that it "was convinced that there was enough [evidence] received sufficient for . . . aggravated malicious wounding." The circuit court elaborated that based on the picture of B.H.'s injuries, it "doesn't look like, logically, it would happen if you threw it because you would think it would be more of a localized wound instead of the glass going down."

ANALYSIS

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). "Thus, 'it is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)).

The only relevant question for this Court on review "is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found

- 5 -

the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

"Determining the credibility of witnesses . . . is within the exclusive province of the jury, which has the unique opportunity to observe the demeanor of the witnesses as they testify." *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) (alteration in original) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993)). "The fact finder, who has the opportunity to see and hear the witnesses, has the sole responsibility to determine their credibility, the weight to be given their testimony, and the inferences to be drawn from proven facts." *Commonwealth v. McNeal*, 282 Va. 16, 22 (2011) (quoting *Taylor v. Commonwealth*, 256 Va. 514, 518 (1998)). An appellate court "will not seek to pass upon the credibility of the witnesses where their evidence is not inherently incredible." *Gerald v. Commonwealth*, 295 Va. 469, 486 (2018) (quoting *Rogers v. Commonwealth*, 183 Va. 190, 201-02 (1944)). "Evidence is not 'incredible' unless it is 'so manifestly false that reasonable men ought not to believe it' or 'shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Id.* at 487 (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)).

A person is guilty of aggravated malicious wounding when he "maliciously shoots, stabs, cuts or wounds any other person or by any means causes bodily injury with the intent to maim, disfigure, disable or kill . . . if the victim is thereby severely injured and is caused to suffer permanent and significant physical impairment." Code § 18.2-51.2. "Malice inheres in the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will. It may be

directly evidenced by words, or inferred from acts and conduct which necessarily result in injury." *Doss v. Commonwealth*, 23 Va. App. 679, 685 (1996) (quoting *Hernandez v. Commonwealth*, 15 Va. App. 626, 631 (1993)). The presence or absence of malice is a question of fact to be determined by the trier of fact. *See Meade v. Commonwealth*, 74 Va. App. 796, 814 (2022).

Davis's argument, based on a factual scenario that is misplaced on appeal, does not show that he was guilty only of unlawful wounding. "The element of malicious wounding that distinguishes it from unlawful wounding is malice, express or implied . . . ." *Witherow v. Commonwealth*, 65 Va. App. 557, 566 (2015) (quoting *Hernandez*, 15 Va. App. at 631). Davis argues, as he did at trial, that B.H. threw a beer bottle at him and that in a "sudden spontaneous reaction" he threw a bottle at B.H., injuring her. Davis maintains that he "was plainly provoked to a sudden fear or rage and thus acted in the heat of passion."

The fatal flaw in this argument is that it cannot be squared with B.H.'s testimony that she never struck or attempted to strike Davis. To the contrary, after B.H. told Davis to "[a]sk [his] friend what happened last night," he charged at her and hit her with a beer bottle.[8] True, Davis testified that he acted only after B.H. threw a bottle at him. But as the Commonwealth noted at trial, the two accounts differed, and it was up to the circuit court to determine what happened. Nothing in the circuit court's verdict in the guilt phase reflects that it found Davis's testimony credible. Moreover, at sentencing the circuit court sustained the Commonwealth's contention that the photos depicting the injuries to B.H.'s face were consistent with her account, not Davis's. Viewing the evidence and the record in the light most favorable to the Commonwealth, we have no basis for

---

[8] Although Davis does not argue that he acted in the heat of passion, and thus without malice, based on his argument with B.H. about the incident on the prior night, any such contention would be groundless. "[W]ords alone, no matter how insulting, are never sufficient to constitute heat of passion.'" *Palmer v. Commonwealth*, 71 Va. App. 225, 237 (2019) (quoting *Rhodes v. Commonwealth*, 41 Va. App. 195, 201 (2003)). Moreover, a reasonable trier of fact could find that Davis acted out of anger based on his unhappiness about the incident on the prior night.

crediting Davis's account. And the fact that Davis gave exculpatory testimony that the circuit court did not believe could be deemed as "lying to conceal his guilt." *Washington v. Commonwealth*, 75 Va. App. 606, 616 (2022) (quoting *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011)).

In sum, the evidence fairly supported the circuit court's finding of fact that Davis acted with malice and was guilty of aggravated malicious wounding. A reasonable trier of fact could find that Davis, angry about B.H.'s actions the prior night, charged at her and violently struck her face with a beer bottle. The attack was so violent that B.H. required extensive surgery that night and anticipated further surgery a year later. And the blow caused permanent eye injury and scarring.

CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*